**Christy BENNETT, Individually and as Guardian, Plaintiff,**

v.

**TOWN OF RIVERHEAD, et al., Defendants.**

**No. CV–93–3472(VVP).**

United States District Court, E.D. New York.

July 11, 1996.

Thomas J. Hillgardner, Law Offices of Thomas J. Hillgardner, Flushing, NY, for Plaintiff.

Kelly A. Clifford, Michael T. Clifford & Associates, Riverhead, NY, for Defendants.

### OPINION AND ORDER

POHORELSKY, United States Magistrate Judge:

This civil rights case arises from a domestic relations dispute in which the Riverhead, New York, Police Department was called upon to intervene. The plaintiffs' Complaint asserts numerous civil rights and common law tort claims against the Town of Riverhead, Sergeant Robert Peeker, individually, and Chief Lawrence Grattan and Lieutenant Joseph Grattan of the Riverhead Police Department in their official capacities.[1] The plaintiffs' civil rights claims under section 1983 of Title 42, United States Code, are for alleged unreasonable seizures in violation of

---

1. The Complaint lists a total of 88 causes of action and also names Christy's former husband William as a defendant. By stipulation, the plaintiffs have discontinued the eleven causes of action asserted against William, as well as eight conspiracy causes of action against the other defendants that had been alleged under section 1985 of Title 42, United States Code.

the Fourth Amendment and deprivations of due process in violation of the Fourteenth Amendment. Their common law tort claims include various claims of negligence, false imprisonment, intentional infliction of emotional distress, abduction, duress and trespassing.

The defendants have moved for summary judgment on the plaintiffs' section 1983 claims, and have moved to dismiss the common law tort claims.[2] For the reasons set forth below the motion for summary judgment is DENIED in its entirety, the motion to dismiss is GRANTED in favor of all defendants on the plaintiffs' common law claims for interference with legal remedy and in favor of all defendants except Peeker on the common law duress claims, and DENIED with respect to all other claims.

## FACTS

Certain of the facts here are undisputed. The plaintiffs are Christy K. Bennett ("Christy") and her daughter Charlotte Bennett ("Charlotte"). In February 1992, the Supreme Court of the State of New York, County of Suffolk, dissolved the marriage of Christy and William Bennett ("William") by a judgment of absolute divorce. The divorce judgment entitled Christy to sole custody of the couple's minor daughter, Charlotte. The judgment also granted William liberal visitation including three weeks per year away from the custodial residence in Suffolk County. William had the right to exercise visitation away from the residence upon thirty-days' written notice to Christy. William did not exercise any of his visitation rights until the incident on August 1, 1992 which gives rise to this litigation.

In April 1992, Christy decided to seek the family court's permission to move with Charlotte from New York to Arizona. To that end, on May 7, 1992, Christy petitioned the family court in Riverhead, New York for modification of William's visitation rights. On May 31, 1992, William was personally served with an order to show cause why the modification should not be granted. Before

any proceedings were held on the order to show cause, however, in compliance with the original divorce decree, William gave Christy written notice, on June 23, 1992, of his intention to exercise his three weeks of visitation commencing August 1, 1992.

On July 27, 1992, the family court held a hearing on Christy's order to show cause regarding modification of the visitation decree. William did not attend. Upon default, the family court modified the original order to allow Christy to move to Arizona with Charlotte. Two days later, on July 29, 1992, William called Christy and asked if he could pick up Charlotte on Saturday, August 1, 1992, for the three-week visitation about which he had earlier given proper notice. Christy told William that she would not allow the visitation because of the new court order that had just been entered.

Nevertheless, on Saturday, August 1, 1992, William sought to exercise visitation, and went to the headquarters of the Riverhead Police Department for assistance in securing custody of his daughter. Because the police viewed the situation as a potentially hostile domestic relations dispute, defendant Sergeant Robert Peeker ("Peeker") accompanied William to the Riverhead residence of Christy and Charlotte. William and Peeker arrived at approximately 7:00 p.m. Upon their arrival, Christy informed Peeker that William was trespassing, so Peeker directed William to return to the sidewalk, and William complied. Christy then invited Peeker into her home to explain her refusal of visitation and to show Peeker the modified order. Peeker accepted the suggestion and entered Christy's home.

The events that followed are in sharp dispute. According to the affidavit submitted by Christy on this motion, Christy explained to Peeker that William had not exercised visitation at all in the six months since the divorce, that she did not know where William lived nor his telephone number, and that she did not know whether or where he worked. She informed Peeker that she was basing her

**2.** Pursuant to 28 U.S.C. § 636(c) the parties have consented to jurisdiction by a United States Magistrate Judge for all purposes including trial.

refusal to permit visitation upon the recently modified court order allowing her and Charlotte to move to Arizona. Peeker asked to see the order, and Christy produced it. After reading both the original order granting visitation to William and the modified order allowing the move to Arizona, Peeker told Christy that in his opinion William was entitled to visitation, and that it was Peeker's job to enforce the divorce judgment. Peeker further informed Christy that if she refused to give Charlotte to William, Peeker would arrest Christy. Christy asked Peeker for permission to call her lawyer, and Peeker consented. Despite several attempts, however, Christy was unable to reach her attorney. Christy then informed Peeker that she would rather be arrested than let William take Charlotte, and she asked Peeker if she could call a friend to take Charlotte. Peeker denied this request, and advised her that, if she were arrested, he would give Charlotte to William.

Peeker told Christy to help Charlotte get ready to leave, but Christy refused. Peeker then ordered eight-year-old Charlotte to pack her things and prepare to leave. While Charlotte packed, Christy told Peeker that his threat of arrest was unlawful and that the proper course of action was for William to go to court on Monday to seek a contempt order. She also told Peeker that her act of releasing her child to Peeker and William was not voluntary. In response Peeker said that he would be violating William's civil rights if he did not enforce his understanding of the divorce decree. Peeker removed Charlotte from the home and released her to her father. William did not return Charlotte to Christy for four weeks.

Christy contends that because of Sergeant Peeker's threat of arrest, she was coerced into giving up custody of her child against her wishes. Further, Christy contends that Peeker's actions caused her to miss two days of work, frustrated her plans to have Charlotte start school in Arizona in two weeks, and created financial hardship that prevented the move until April of the following year.

The defendants' version of the events, as set forth in an affidavit made by their counsel supported in part by excerpts from Christy's deposition, is in sharp conflict with Christy's affidavit regarding Peeker's actions in her home. They contend that Peeker did not threaten Christy with arrest, but rather merely examined the two court orders and warned her about the possible consequences if she did not release Charlotte to William's custody. According to the defendants, Christy's subsequent release of Charlotte was made with consent, and Charlotte herself had no objection to leaving with her father. Thus, there were no constitutional violations for which the plaintiffs are entitled to recovery.

## DISCUSSION

### I. Summary Judgment Standards

A motion for summary judgment will be granted when no material issue of fact remains to be decided and the undisputed facts warrant judgment for the moving party as a matter of law. *Tomka v. The Seiler Corp,* 66 F.3d 1295, 1299 (2d Cir.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). If a reasonable jury could return a verdict for the non-movant, then a material issue of fact remains in contention and the motion must be denied. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The burden of proving that no material issue of fact remains in dispute rests on the movant. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. Once a motion has been made, however, the non-moving party must set forth specific factual allegations to avoid summary judgment. *Kurisoo v. Providence and Worcester Railroad Company,* 68 F.3d 591, 594 (2d Cir.1995); *Fahle v. Braslow,* 913 F.Supp. 145, 149 (E.D.N.Y.1996) (citations omitted). Conclusory, *ipse dixit* assertions will not defeat a summary judgment motion. *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990).

The parties may not rely on the pleadings but must support their respective positions with affidavits, exhibits, discovery responses, or deposition testimony. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *United States v. Rem,* 38 F.3d 634, 635 (2d Cir.1994). The non-

movant need not, however, submit evidence in a form that would be admissible at trial to avoid summary judgment. *Fahle,* 913 F.Supp. at 149. Any ambiguities and all inferences must be drawn in favor of the non-movant. *Institute for Shipboard Education v. Cigna Worldwide Insurance Co.,* 22 F.3d 414, 418 (2d Cir.1994); *Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990). Finally, this court is charged not with "issue resolution" but rather with "issue finding," and is barred from trying issues of fact. *Gallo v. Prudential Residential Servs. Ltd. Partnership,* 22 F.3d 1219, 1224 (2d Cir.1994).

## II. The Section 1983 Claims

■ Title 42, United States Code, section 1983, reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To sustain an action under section 1983, plaintiffs must have suffered a deprivation of an interest protected by the Constitution or other federal law. *See, Dahlberg v. Becker,* 748 F.2d 85, 88–89 (2d Cir.1984).

The defendants' first contention in their motion for summary judgment is that no such interest was violated by Sergeant Peeker's actions. Defendant Peeker further contends that, even if there were a civil rights violation, he is protected from liability by virtue of his qualified immunity. For their part, Chief Lawrence Grattan, Lieutenant Joseph Grattan and the Town of Riverhead (the "municipal defendants") contend that, even if there were a civil rights violation, they are not liable for any damages because the plaintiffs have presented no factual basis whatever that the violation resulted from a municipal policy as required by *Monell v. New York City Dept. of Social Servs.,* 436

U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Each contention shall be taken in turn.

### A. The Civil Rights Violations

#### 1. Fourth Amendment Violation: Unreasonable Seizure

Plaintiff Christy Bennett contends that Peeker's threat to arrest her for what he viewed as a violation of the divorce decree's visitation provision was an unreasonable seizure in violation of the Fourth Amendment. The defendants argue on this motion that no seizure within the meaning of the Fourth Amendment occurred.

■ The plaintiffs do not cite, and this court has been unable to find, any published decisions of the Supreme Court or of any court within the Second Circuit that have held the *threat* of arrest by a police officer to be a seizure. Principles gleaned from analogous cases, however, persuade this court that a threat to arrest, in the circumstances alleged here, would constitute a "seizure" subject to the protections of the Fourth Amendment.

In *United States v. Mendenhall,* the Supreme Court concluded that "a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would conclude that he was not free to leave." 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). In *Florida v. Bostick,* 501 U.S. 429, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) the Supreme Court added a second prong to the constitutional concept of "seizure." The Court there found the "free to leave" language from *Mendenhall* to be inapplicable in circumstances where "freedom of movement was restricted by a factor independent of police conduct." *Id.* at 436, 111 S.Ct. at 2387. "In such a situation, the appropriate inquiry is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 437, 111 S.Ct. at 2387. "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable

person that he was not at liberty to ignore the police presence and go about his business.'" *Id.* (quoting *Michigan v. Chesternut,* 486 U.S. 567, 569, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565 (1988)).

Given the above principles, the conflicting versions of the events in Christy's home leave material issues of fact in dispute. The *Mendenhall* "free to leave" analysis does not apply here because a factor independent of police conduct restricted Christy's freedom of movement, specifically, the encounter occurred in her own home. Applying the *Bostick* test, if the jury should credit Christy's account, one could conclude that a reasonable person in Christy Bennett's position could not have ignored Sergeant Peeker and gone about her business. Her only options were to hand over her child or to be arrested; ignoring Sergeant Peeker's threat of arrest was impossible. *See also Vickroy v. City of Springfield,* 706 F.2d 853, 854 (7th Cir.1983) (threat of arrest if person does not identify himself to police officers constitutes a seizure under the Fourth Amendment).

The defendants' contention that the encounter was consensual is largely irrelevant to the determination of this motion. Relying on the Supreme Court's decision in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which stated that no Fourth Amendment scrutiny shall arise where an encounter with police is consensual, the defendants argue that at no point was the encounter between Christy Bennett and Peeker nonconsensual. The argument is flawed because it presumes a different set of facts than those alleged by the plaintiffs. The defendants contend that Peeker merely informed Christy of the risks associated with disobeying a visitation decree and did not threaten her with arrest. This directly conflicts with Christy's affidavit, however, which states that Peeker expressly threatened Christy with arrest, and Christy expressly told Peeker that she was not voluntarily giving up her daughter. This conflict concerning what transpired in the Bennett home that evening leaves material questions of fact in dispute and renders summary judgment inappropriate.

Charlotte Bennett's unreasonable seizure claim is similarly inappropriate for summary judgment. If, as is alleged by Christy in her affidavit, Peeker directed Charlotte to pack her things, he seized the eight-year-old girl because she could not have ignored him and gone about her business. *See, Bostick,* 501 U.S. at 437, 111 S.Ct. at 2387–88. The alleged subsequent removal of the girl from her home and release to William only made the seizure more complete. Thus, the question whether an unreasonable seizure occurred turns on the question of consent and therefore depends on the determination of disputed facts.

2. *Fourteenth Amendment Violation: Deprivation of Due Process*

The plaintiffs also allege that Sergeant Peeker's actions violated the Due Process Clause of the Fourteenth Amendment. In analyzing these due process claims, the first step is to determine whether the plaintiffs were deprived of a liberty interest protected by the Fourteenth Amendment. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). "If such a deprivation has occurred, the remaining question is 'the nature of the process that is due.'" *Duchesne v. Sugarman,* 566 F.2d 817, 824 (2d Cir.1977) (quoting *Morrissey v. Brewer,* 408 U.S. 471, 484, 92 S.Ct. 2593, 2601–02, 33 L.Ed.2d 484 (1972)). Christy Bennett contends that her liberty interest in the custody of her child was violated without due process of law when Peeker removed her daughter from their home and gave her to William Bennett. Similarly, Charlotte Bennett contends that Peeker's actions deprived her of her liberty interest in daily association with her mother.

Both plaintiffs correctly assert recognized liberty interests. The Fourteenth Amendment's protection extends to the right of a family to stay together without governmental interference. *Id.,* at 825. It is clear that parents have a constitutionally protected liberty interest in the custody of their children that, in the absence of emergency, cannot be violated without due process. *E.g., Hurlman v. Rice,* 927 F.2d 74, 79 (2d Cir. 1991). This interest is reciprocal in that it

belongs to the children as much as it does to parents. *Duchesne,* 566 F.2d at 825.

■ On the remaining issue, the nature of the process that is due, the Court of Appeals for the Second Circuit has provided specific guidance. In *Hurlman,* on facts remarkably similar to those presented here, that Court upheld the district court's denial of summary judgment motions made by law enforcement officers who interfered in a custody matter. There, several New York State troopers removed four-year-old Jillian Rice from the home of her grandparents, the Hurlmans. The little girl was staying there with her mother, Patricia Rice, because her mother was estranged from Jillian's father, Charles Rice. On the night of the incident in question, Charles Rice went to the State Police barracks seeking police assistance in the removal of his daughter from the Hurlman residence. Charles Rice showed the troopers a family court order requiring Patricia to show cause why she should not be required to stop living with Jillian at the Hurlmans' home. Armed with only the order to show cause, the troopers went to the Hurlmans' home, entered without consent, removed Jillian, and delivered her to Charles Rice. On those facts, the Second Circuit held that "[in] light of a parent's constitutionally protected 'liberty' interest in the custody of his or her children, officials may remove a child from the custody of the parent without consent or a prior court order only in 'emergency' circumstances." *Id.* at 80 (citing *Stanley v. Illinois,* 405 U.S. 645, 649–58, 92 S.Ct. 1208, 1211–16, 31 L.Ed.2d 551 (1972); *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987)).

The similarity between *Hurlman* and the present case is obvious. The defendants here assert neither an emergency nor a court order as justification for Peeker's actions; their alleged justification is Christy's consent. But since factual issues remain to be resolved concerning the question of consent, summary judgment is inappropriate.

### B. *Qualified Immunity of Sgt. Peeker*

■ Defendant Peeker asserts that as a police officer he is entitled to qualified immunity. Qualified immunity protects public officials such as police officers from civil liability arising from the performance of discretionary functions when "their conduct does not violate a clearly established statutory or constitutional right." *Mozzochi v. Borden,* 959 F.2d 1174, 1177 (2d Cir.1992) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The defense is governed by an objective reasonableness standard, and it may be established in three ways. *See Robison v. Via,* 821 F.2d at 920–21. First, a defendant may enjoy qualified immunity if the right asserted by the plaintiff was not clearly established at the time of the alleged violation. Second, even if the right was clearly established, a defendant may nevertheless enjoy qualified immunity if "it was not clear at the time of the acts at issue that an exception did not permit those acts." *Id.* at 921. Finally, qualified immunity may be found if it was objectively reasonable for the public official to believe the acts in question did not violate clearly established rights. The first two grounds above are for the court to determine as a matter of law. The third requires factual determinations concerning the reasonableness of the official's beliefs. *Id.* at 920–21.

■ Turning to the first ground for qualified immunity, the Constitution and numerous Supreme Court cases, including *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980), have established the right of individuals to be free from unreasonable seizure in their homes, and the *Hurlman* case in 1991 clearly established the liberty interests at issue here. The defendants do not contend otherwise.

As to the second ground for qualified immunity, the defendants have not identified any exceptions which would have made it unclear that Peeker's actions, as alleged by Christy, were not permitted. On the unreasonable seizure claims, Peeker does not assert, nor has this court been able to find, any exception that would allow an officer to seize a person in order to effectuate a change of custody that the officer has no court order to enforce. On the due process claims, *Hurlman* is abundantly clear that an officer may not remove a child from her custodial parent without consent, a court order or the presence of an emergency. The court is unable on the present record to determine that any

of those three justifications for removing a child from her parent applies here. The defendants do not contend that there was an emergency or that Peeker was acting pursuant to court order. As stated above, the issue of consent presents disputed issues of fact. Summary judgment on this ground is therefore inappropriate.

The third route to qualified immunity focuses on the facts of the case, but that does not foreclose summary judgment if this court concludes that no reasonable jury could find Peeker's actions as alleged by plaintiffs to be unreasonable. *See Robison,* 821 F.2d at 921. However, in view of the precedents of the Supreme Court and the Second Circuit regarding the rights involved and the manner in which police officers should conduct themselves in these situations, the court concludes that a reasonable jury could find Peeker's removal of Charlotte and threat to arrest Christy to be unreasonable.

Defendant Peeker does not meet any of the three possible grounds for granting qualified immunity on this motion for summary judgment. The denial of his motion at this point is without prejudice, however, to renewal of the defense at trial upon a motion for a directed verdict or upon a motion for judgment notwithstanding the verdict. *See Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir. 1990).

### C. *Liability of the Municipal Defendants*

■ The standards for establishing the liability of a municipality under section 1983 for acts of its employees was originally set forth in *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In the Second Circuit, the same standards apply to the liability of supervisory employees for acts of lower level employees. *See, e.g., Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 122 (2d Cir.1991). Under those cases, a municipality and its supervisory employees cannot be held liable for civil rights violations committed by its employees based solely upon *respondeat superior. Id.* at 694. To establish liability, a plaintiff must establish the existence of a municipal policy or custom which caused the deprivation of constitutional rights. *Vippolis*

*v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985). A plaintiff prevails if she can prove the existence of a municipal policy or custom which is facially unconstitutional, *see Oklahoma v. Tuttle,* 471 U.S. 808, 822, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791 (1985), or the existence of a constitutional policy, which is unconstitutionally applied because the employee has not been adequately trained out of "deliberate indifference" to the rights of persons with whom the employee comes into contact. *See City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1203–04, 103 L.Ed.2d 412 (1989).

■ In response to the defendants' argument that the plaintiffs have produced no evidence of a policy or custom sufficient to establish liability by the municipal defendants, the plaintiffs point to paragraphs 1 and 7 of the defendants' Answer and Cross–Claim. They contend that those paragraphs, when read in conjunction with paragraphs 26 and 33 of their Complaint, constitute an admission that the municipal defendants have and enforce a policy "to arrest persons who are in violation of any court order or decree and to explain to such persons that an arrest will be made if there is a violation of said decree or order." Plaintiffs' Mem. at 19. Other than that purported admission, however, the plaintiffs have produced no evidence concerning the existence or enforcement of such a policy.

The defendants strenuously disagree with the characterization of their Answer that the defendants advance. They contend, not through the affidavits or other sworn testimony of the defendants but solely through the affidavit of their attorney, that no such policy of arrest without specific direction of the court exists. Upon review of the paragraphs of the defendants' Answer cited by the plaintiffs, the court concludes that they are decidedly ambiguous on the policies followed by the police when faced with what the police consider non-compliance with a court order or decree. Given that ambiguity, one would expect the plaintiffs to produce additional evidence concerning those policies. At the same time, however, the ambiguity prevents the court from finding as a matter of law on the present record that whatever

policy does exist is not unconstitutional on its face, under *Tuttle,* or as applied, under *City of Canton.* Accordingly, summary judgment in favor of the municipal defendants is inappropriate.

### III. Common Law Tort Claims

 The defendants' principal argument for dismissal of the state law claims proceeds on the assumption that all of the federal claims will be dismissed, leaving the court without jurisdiction over the state law claims because the amount in controversy requirement for diversity jurisdiction is not met. Since the federal claims are not dismissed, however, this court has pendent jurisdiction over the state claims regardless of the amount in controversy because the state claims arise out of the "common nucleus of operative fact" from which the federal claims arise. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

 Even in the absence of pendent jurisdiction, however, diversity of citizenship would provide an appropriate basis for the exercise of jurisdiction by the court with respect to the plaintiffs' state law tort claims. The defendants concede that the parties are diverse because at the time this suit was filed both plaintiffs were residents of Arizona and all defendants were citizens of New York. *See, e.g., Dullard v. Berkeley Associates Co.,* 606 F.2d 890, 893 (2d Cir.1979) (diversity is assessed at the time suit is filed, not at the time the claims arose).

 As to the "amount in controversy" requirement, *see* 28 U.S.C. § 1332(a), it is not enough to warrant dismissal that the "allegations leave grave doubt about the likelihood of a recovery of the requisite amount." *Zacharia v. Harbor Island Spa, Inc.,* 684 F.2d 199, 202 (2d Cir.1982). It must appear to a "legal certainty" that the allegations do not warrant an award in excess of $50,000. *Id.* The court is not prepared to hold, to a legal certainty, that improper severing of the custodial relationship, the accompanying emotional suffering, and a one-year delay in a planned move from New York to Arizona among other claims cannot result in a damages award in excess of $50,000.

The defendants also move to dismiss, for failure to state a claim upon which relief may be granted, the plaintiffs' claims of loss of legal remedy, duress, abduction of a child, negligent training, and negligent supervision. They provide no legal authority, however, for their contention that those claims are not recognized or improperly pleaded under New York law. Nor, on the other hand, have the plaintiffs provided any legal authority that those claims *are* recognized and properly pleaded under New York law.

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). On a motion to dismiss, a court must construe all allegations of the complaint in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

 The claims based on negligent training and supervision are merely negligence claims with a specified duty, and are therefore recognized causes of action under New York law and cannot be dismissed. *E.g., Hooper v. Meloni,* 123 A.D.2d 511, 507 N.Y.S.2d 103 (App.Div. 4th Dep't 1986); *cf. Joseph v. City of Buffalo,* 187 A.D.2d 946, 590 N.Y.S.2d 350 (App.Div. 4th Dep't 1992).

 Christy's claim for abduction of her child also finds solid basis in New York law. The New York Court of Appeals has held that custodial parents are entitled to damages for injured feelings resulting from the abduction of their children, without alleging or proving loss of services. *Pickle v. Page,* 252 N.Y. 474, 169 N.E. 650, 653 (1930). More recently, the Appellate Division, First Department, recognized abduction as a cause of action belonging solely to a parent. *Offenhartz v. Cohen,* 168 A.D.2d 268, 562 N.Y.S.2d 500 (App.Div. 1st Dep't 1990). "[A] parent who has been wrongfully deprived of the company of his child, by interference with such custody, association and companionship, may recover damages from the wrongdoer for the mental anguish and wounded feelings

and for the expenses incurred in vindicating the parent's rights to have his child." *McGrady v. Rosenbaum,* 62 Misc.2d 182, 308 N.Y.S.2d 181, 186–87 (N.Y.Sup.Ct.1970) (citing *Pickle v. Page,* 252 N.Y. 474, 169 N.E. 650 (1930) and *McEntee v. New York Foundling Hosp.,* 21 Misc.2d 903, 194 N.Y.S.2d 269 (N.Y.Sup.Ct.1959). *See also Kajtazi v. Kajtazi,* 488 F.Supp. 15, 18 (E.D.N.Y.1978) ("the unlawful taking or withholding of a minor child from the custody of the parent entitled to such custody is a tort"). Christy Bennett's abduction claims are cognizable under New York law and therefore cannot be dismissed.

■■■■■ The final two claims that the defendants seek to dismiss, duress and interference with legal remedy, are not as clearly established under New York law. The court has been unable to find any decisions by New York's highest court that explicitly recognize the existence of duress or loss of legal remedy as torts. New York, however, does recognize the closely related concept of coercion as a crime, *see* N.Y.Penal Code § 135.60 and § 135.65 (McKinney 1990), and two New York trial level decisions have recognized duress as a cause of action. *See, Ippisch v. Moricz–Smith,* 1 Misc.2d 120, 144 N.Y.S.2d 505, 508 (Sup.Ct. Kings Cty. 1955), *modified on other grounds,* 1 A.D.2d 968, 150 N.Y.S.2d 419 (App.Div. 2d Dep't 1956) and *Pearson v. Pearson,* 29 Misc.2d 677, 212 N.Y.S.2d 281, 283–84 (Sup.Ct. Kings Cty.), *rev'd on other grounds,* 15 A.D.2d 554, 222 N.Y.S.2d 862 (App.Div. 2d Dep't 1961). Both cases support Christy's claim that an unlawful threat of arrest intended to prevent her from exercising her legal rights spells out a cause of action for duress. If coercion or duress do exist as torts under New York law, however, they require "as an element that the defendant have acted illegally." *Sun Chemical Corp. v. Dainippon Ink & Chemicals, Inc.,* 635 F.Supp. 1417, 1420 (S.D.N.Y.1986).

Under these principles, the complaint has sufficiently pleaded a claim against Sergeant Peeker for duress. Because Christy makes no allegations that the municipal defendants acted illegally, however, the duress claims against them must be dismissed.

■■■ The interference with legal remedy claims must also be dismissed. Even if there were such a claim available in New York, the court fails to find any allegations in the complaint concerning a legal remedy that Christy was prevented or obstructed from obtaining. None of the alleged acts of any of the defendants establish any interference with Christy's right to seek the judicial remedies available to her.

### CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is **GRANTED,** in part, such that the First, Fourth, Thirteenth, Twenty–Third, Twenty–Sixth, Thirty–Fifth, and Thirty–Eighth Causes of Action pleaded in the Complaint are dismissed, and in all other respects the defendants' motions for summary judgment and to dismiss are **DENIED.**

**SO ORDERED.**