Kenneth BROWN, Plaintiff,

v.

Ronald SWEENEY and Joseph Lucas, Defendant.

Civil Action No. 07–10065–WGY.

United States District Court, D. Massachusetts.

Nov. 1, 2007.

Cornelius H. Kane, Jr., Boston, MA, for Plaintiff.

Regina M. Ryan, Merrick, Louison & Costello, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

This action results from a confrontation between the plaintiff Kenneth Brown ("Brown") and the defendant Ronald Sweeney ("Sweeney") who, acting in his capacity as police officer for the Town of Hull, sought to take a car parked in Brown's business lot to the police station upon the ground that it had been reported as a stolen vehicle. Sweeney acted under instructions of the defendant, Hull police sergeant, Joseph Lucas ("Lucas").

Brown alleges that Sweeney, in his capacity as a police officer, interfered with Brown's federal and state constitutional rights or statutory rights by threatening to arrest Brown if he did not back off from his opposition to the removal of the vehicle.

## I. BACKGROUND

### A. *Procedural Posture*

On January 12, 2007, Brown initiated this action by filing a complaint ("Compl.") [Doc. No. 1] which contained four counts: (1) violation of federal civil rights, *id.* ¶¶ 43–47; (2) conspiracy to violate federal civil rights, *id.* ¶¶ 48–51; (3) violation of state civil rights, *id.* ¶¶ 52–54; and (4) conspiracy to violate state civil rights, *id.* ¶¶ 55–59.

On June 14, 2007, Sweeney and Lucas filed a motion to dismiss ("Defs. Mot. to Dismiss") [Doc. No. 6] supported by a memorandum. Defs. Mem. in Supp. of Mot. to Dismiss ("Defs.Mem.") [Doc. No. 7].

On June 28, 2007, Brown filed an opposition to the motion to dismiss. Pl. Opp' n Mem. to Defs. Mot. to Dismiss ("Pl. Opp'n Mem.") [Doc. No. 8].

## B.  *Alleged Facts*

On January 14, 2004, Sweeney, in his capacity as a police officer for the Town of Hull, arrived at the business owned and operated by Brown at a location in Hull, Massachusetts.  Compl. ¶¶ 5, 9.  Brown was not present at his business office.  *Id.* ¶¶ 10, 11. Sweeney addressed an employee of Brown's and told him that he was going to remove a vehicle from the premises on suspicion that it was stolen.  *Id.* ¶ 13. Sweeney had been directed to do so by Lucas, his superior at the Hull Police Department.  *Id.* ¶ 14.

Brown's employee asked Sweeney to wait until Brown was contacted.  *Id.* ¶ 17. After being contacted, Brown returned to his business *Id.* ¶ 18.  Sweeney repeated to Brown that a vehicle on Brown's premises was reported stolen and that Sweeney was going to impound the car.  *Id.* ¶ 19. Brown refused to allow Sweeney to impound the vehicle.  *Id.* ¶¶ 27, 29.  Sweeney threatened to arrest Brown if he would not allow Sweeney to remove the vehicle.  *Id.* ¶ 28.

Brown did not own the vehicle.  *See id.* ¶¶ 12a, 25.  Instead, Brown had entered into an agreement with the owner to store the vehicle at Brown's business location. *Id.* ¶ 12a.  As a result of this arrangement, Brown retained documents related to the ownership of the vehicle.  *See id.* ¶ 32.

Brown convinced Sweeney to go to Brown's house and inspect the documents. *Id.* ¶¶ 32–33.  After inspecting the documents, Sweeney returned to the police station without removing the vehicle.  *Id.* ¶ 33.  Sweeney informed Brown that he might return to arrest him later.  *Id.* ¶ 34.

Shortly thereafter, Sargent Donald Love at the Hull Police Department determined that there was no existing lien on the vehicle.  *Id.* ¶ 36.  The investigation regarding the stolen car continued though no action was taken in regard to the vehicle. *Id.* ¶ 37; *see id.* ¶¶ 38–42.  Months later, Sweeney completed a police report which Brown considers inaccurate.  *Id.* ¶ 39.

Brown states that the accusation that the automobile was stolen was false *id.* ¶ 20, that the motor vehicle was not stolen, *id.* ¶ 21, that there was no written stolen motor vehicle report *id.* ¶ 22, and that Sweeney had no warrant.  *Id.* ¶ 23.

## C.  *Jurisdiction*

This Court has federal question jurisdiction pursuant to 42 U.S.C. §§ 1983 ("section 1983") and 1985 ("section 1985") and supplemental jurisdiction over the state civil rights claims pursuant to 28 U.S.C. § 1367(a).

## III.  DISCUSSION

### A.  *Standard of Review*

A court ought allow a motion to dismiss only where it is clear that, even if all the facts in the complaint are true, the plaintiff cannot recover on any viable legal theory. *Barrington Cove Ltd. P'ship v. Rhode Island Housing and Mortgage Fin. Corp.,* 246 F.3d 1, 5 (1st Cir.2001).  Prior to the last term of the Supreme Court, guidance for such a determination emanated from *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and its oft-quoted standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45–46, 78 S.Ct. 99.

The Supreme Court, however, in its recent decision in *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), explicitly abrogated *Conley.  Bell Atlantic,* 127 S.Ct. at 1968–69.  Specifically, the Supreme Court rejected a literal and isolated interpreta-

tion of *Conley*'s "no set of facts" language. *Id.* at 1968. Such an interpretation would allow for "any statement revealing the theory of the claim [to] suffice unless its factual impossibility may be shown from the fact of the pleadings." *Id.*

Instead, the Supreme Court rejected this "negative gloss" on the Federal Rule of Civil Procedure 8(a)(2), which requires a defendant to give "fair notice" of a claim and the "grounds" upon which that claim rests. *Id.* at 1964, 1969. The pleading standard requires that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. The complaint is required to state "enough factual matter (taken as true)" to support the elements of the claim. *Id.* at 1965. This essentially ensures that a defendant will understand the "grounds" upon which the claim rests. Conclusory statements do not satisfy this standard because they merely demonstrate a possibility and not a plausibility of entitlement to relief. *Id.* at 1966.

The United States Supreme Court is the flagship of a vast fleet of courts. Where, as here, it makes a course correction after sailing on a particular tack for a long period of time, it has the right to expect that each of the subordinate units will keep station on the flag, make the identical course correction, and sail on the new course in perfect alignment. At least that is the theory.

Here, of course, the metaphor breaks down. Decisions of the Supreme Court do not come with precise orders, such as "alter course three degrees to starboard." Rather they carefully decide the specific controversy before the Court and explain the grounds of such decision. Given our strong stare decisis tradition, however, every such decision implicitly carries a signal much like Nelson's famous "England ex-

pects ..." flag hoist at Trafalgar, i.e. "that every man shall do his duty" and so we all shall ... at least insofar as we can make out the signal.

There is some merit to an argument limiting the reach of *Bell Atlantic* to its antitrust subject matter. Professor Erwin Chermerinsky suggested such a limitation in addressing the District of Massachusetts Judicial Conference in June 2007. The Supreme Court in *Bell Atlantic* noted the imperative of dismissing antitrust claims before embarking your expensive discovery. *Bell Atlantic*, 127 S.Ct. at 1966–67. Such an argument is supported by the more recent Supreme Court decision in *Erickson v. Pardus*, — U.S. —, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). The Supreme Court, in *Erickson*, addressed a claim for a section 1983 violation and stated that "[s]pecific facts are not necessary." *Id.* at 2200. To make matters more confusing, the authority cited for the proposition is *Bell Atlantic*, with an internal quotation citing *Conley*. *Id.* The Court of Appeals for the Seventh Circuit in *In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation*, 491 F.3d 638, (7th Cir.2007), appeared to place significant importance on the antitrust subject matter of *Bell Atlantic*. *In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation*, 491 F.3d at 648–49 (7th Cir. 2007). Yet, while the Seventh Circuit draws this distinction, it did not apply it in practice. *See id.* Instead, it cited the prominent holding of *Bell Atlantic* that a complaint must contain "enough factual matter (taken as true)" to provide a defendant notice. *Id.* (citing *Bell Atlantic* ).

Additionally, the Eastern District of New York wrestled with the subsequent holding in *Erickson* after the decision in *Bell Atlantic*. *See Somin v. Total Comty. Mgmt. Corp.*, 494 F.Supp.2d 153, 157–8, (E.D.N.Y.2007). The court in *Somin* read

Bell Atlantic narrowly, stating that no heightened pleading standard was imposed. *Id.* at 158. Instead, it stated that "*Bell Atlantic* holds that a 'formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).' " *Id.* (citing *Williams v. Berkshire Fin. Grp. Inc.,* 491 F.Supp.2d. 320, 324, (E.D.N.Y., 2007) (quoting *Bell Atlantic,* 127 S.Ct. at 1959)).

*Bell Atlantic,* when read together with *Erickson,* and in light of the cases that have addressed this issue, appears neither to be confined to antitrust cases nor to impose a significantly heightened pleading standard. *See Rodriguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–6, (1st Cir. 2007) (Lynch, J.) (holding that *Bell Atlantic* requires "a plausible entitlement to relief."); *Marrero–Gutierrez v. Molina,* 491 F.3d 1, 9–10 (1st.Cir.2007) (same, in the context of political discrimination); *Iqbal v. Hasty,* 490 F.3d 143, 157–8, (2d Cir. 2007) (holding that *Bell Atlantic* requires a flexible "plausibility standard" that neither limited the subject matter to antitrust nor did it create a heightened pleading standard); Gregory P. Joseph, *Pleading Requirements,* The National Law Journal, Sept. 3, 2007, at 13. The use of the *Bell Atlantic* language and standard in Erickson implies that recognizing a heightened (or different) pleading standard only for antitrust cases and therefore distinguishing *Bell Atlantic* on its antitrust subject matter ought fail. *See Erickson,* 127 S.Ct. at 2200.

Still, *Erickson* is instructive in analyzing a motion to dismiss after *Bell Atlantic.* In *Erickson,* the Supreme Court held that a section 1983 claim alleging de-

liberate indifference to serious medical needs in violation of the Eighth Amendment was properly pled where "[t]he complaint stated that [the doctor's] decision to remove petitioner from his prescribed hepatitis C medication was 'endangering [his] life' " and that "this medication was withheld 'shortly after' petitioner had commenced a treatment program that would take one year, that he was 'still in need of treatment for this disease,' and that the prison officials were in the meantime refusing to provide treatment." *Id.* (internal citations are to the complaint). These generalized factual allegations were deemed sufficient and demonstrate that a liberal pleading standard as to the "grounds" of a claim remains. *See id.* The decision in *Bell Atlantic,* therefore, is properly read as undermining only those claims that rest exclusively on conclusory or merely speculative assertions. 127 S.Ct. at 1966; *see Rodriguez–Ortiz,* 490 F.3d at 95. *See also In re TJX Companies Retail Sec. Breach Litigation,* 524 F.Supp.2d 83, 87, 2007 WL 2982994, at *2 (D.Mass.2007).

October 12, 2007 (*Bell Atlantic* does not substantially change the pleading standards extant in the First Circuit).

## B. *The Defendants' Motion to Dismiss*

In accordance with *Bell Atlantic* the Court will analyze each count brought by Brown to see whether it satisfies Federal Rule of Civil Procedure 8(a)(2), i.e. whether the complaint contains, as to each count, "enough factual matter (taken as true)" to support the elements of the alleged claim.

### 1. Violation of Federal Civil Rights

█ To succeed on a claim under section 1983,[1] Brown must demonstrate the

---

1. Section 1983 provides:

Every person who, under color of any stat-

ute, ordinance, regulation, custom, or us-

plausibility of proving that the conduct complained of (1) was committed by a person acting under color of state law and that it (2) deprived him of a constitutional right or a federal statutory right. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001) (stating that the plaintiff must show that the "defendants' acts or omissions caused a constitutional injury.").

There is no question, and both Sweeney and Lucas concede as much, that Brown satisfies the first requirement, as both defendants were police officers for the Town of Hull. Pl. Opp'n Mem. at 4; *see Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (requiring only that the conduct allegedly causing the deprivation of a federal right be "fairly attributable" to the State). The proper focus of this inquiry thus centers on whether Brown alleges any cognizable constitutional injury.

It is not explicitly clear from the complaint or from the opposition memorandum what constitutional injuries Brown alleges occurred. It appears that Brown alleges both an impairment of contracts claim, that would likely be cognizable under the right to property protected by the Fourteenth Amendment,[2] and a Fourth Amendment violation.

### a)Impairment of Contract

The interference or impairment of a contract arises, for purposes of section 1983, under the procedural due process jurisprudence of the Fourteenth Amendment. *Cf. PFZ Props., Inc. v. Rodriguez*, 928 F.2d 28, 30 (1st Cir.1991). To establish a procedural due process violation, Brown would need to identify a protected liberty or property interest and allege a deprivation of that protected interest. *Aponte–Torres v. University of P.R.*, 445 F.3d 50, 56 (1st Cir.2006).

A person has a protected property interest where one has "more than an abstract need or desire for [a thing] ... [and] more than a unilateral expectation of it." *Redondo–Borges v. United States Dep't of Housing and Urban Dev.*, 421 F.3d 1, 8 (1st Cir.2005). Assuming that a contract did exist between Brown and the rightful owner of the vehicle at issue in this case, such a contract would give rise to a protected property interest. *See id.* at 8, n. 4 (distinguishing a bid award from a full-fledged contract).

While a protected property interest is likely found here, Brown also needs to allege a deprivation of that interest. *See Aponte–Torres*, 445 F.3d at 56. Here, Sweeney never impounded the vehicle. Sweeney merely stated that he had to impound the vehicle as a result of an accusation that it had been stolen. "Generally, mere verbal threats made by state-actor do not constitute a § 1983 claim" *Nagy v. Town of Andover*, Civ. No. 01–112–M, 2001 WL 1326684 *2, *6 (D.N.H. Oct. 19, 2001) (citing *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir.1997)). In this case, Sweeney at most orally "threatened" Brown to impound the vehicle. Brown never had any further contact with Sweeney after providing Sweeney with proof of

age, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

2. The impairment of a contract independently violates article 1, § 10, of the United States Constitution.

title. As a result, Brown fails to allege any cognizable deprivation.

b)Fourth Amendment Violation

██ Brown also alleges that his Fourth Amendment rights were violated by Sweeney's threat to arrest him.[3] Section 1983 is not, by itself, a source of any substantive rights, rather it creates a cause of action to remedy certain deprivations of federal rights. *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). The proper inquiry, therefore, is whether Brown adequately states a Fourth Amendment claim.

To succeed here, Brown must demonstrate that a mere threat of arrest states a cognizable claim of a Fourth Amendment violation. This in turn depends upon whether Brown was "seized" for purposes of the Fourth Amendment.[4]

The test for whether a person has been "seized" for purposes of the Fourth Amendment is whether "the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)).

Generally, a mere oral threat of an arrest by a police officer absent any other factual allegations does not constitute such a "seizure." *Britton v. Maloney*, 196 F.3d 24, 29–30 (1st Cir.1999) (holding that a summons alone did not constitute a seizure by simply threatening an arrest); *Nagy v. Town of Andover*, Civ. No. 01–112–M, 2001 WL 1326684, *2, *6 (D.N.H. Oct. 19, 2001) (holding that no seizure occurred when police officers ordered a person to comply with their requests to remove an obstruction from a driveway or else face an arrest for disorderly conduct); *Bodek v. Bunis*, No. 06–CV–6022L, 2007 WL 1526423, *9 (W.D.N.Y. May 23, 2007) (slip opinion). *Cf. Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir.1991) (holding in the context of a substantive due process claim that verbal harassment or idle threats are generally not sufficient to constitute an invasion of a protected liberty interest). *But see Vickroy v. City of Springfield, Mo.*, 706 F.2d 853, 854 (8th Cir.1983) (holding that a seizure occurred when an officer threatened a person with arrest unless he showed identification).

In some cases, however, a police officer's threat of arrest constitutes coercive conduct comparable to an arrest that results in a constitutional "seizure." *See Britton*, 196 F.3d at 29 (holding that the use of force is not required to effectuate a seizure); *Svitlik v. O'Leary*, 419 F.Supp.2d 189, 191 (D.Conn.2006) (holding that a seizure occurred when the officers coerced a suspect to drive to the police station through threats of arrest and threats to tow his car); *Bennett v. Town of Riverhead*, 940 F.Supp. 481, 487–89 (E.D.N.Y. 1996) (holding that a seizure occurred where a parent in an alleged violation of a visitation decree was threatened with arrest if she did not hand over her child);

---

**3.** Note that there is no allegation of any First Amendment violation. The analysis would be different if a police officer threatened to arrest a person in an effort to chill his or her exercise of First Amendment rights. *See McCormick v. City of Lawrence, Kansas*, 253 F.Supp.2d 1172, 1196 (D.Kan.2003).

**4.** Though qualified immunity will certainly be argued in this case, this Court must first evaluate whether Brown adequately has alleged the deprivation of an actual constitutional right at all. *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Where a plaintiff has failed to do so, a court need not determine the qualified immunity issue. *See id.*

*Strahan v. Frazier,* 156 F.Supp.2d 80, 97 (D.Mass.2001) (finding a reasonable inference existed that the police forcibly handcuffed the plaintiff).

The line drawn between a mere threat of arrest and a threat to compel compliance is in most circumstances a factual one, thus making such a determination usually inappropriate on a motion to dismiss. Here, however, the facts that Brown alleges themselves demonstrate that no seizure occurred. Sweeney threatened to arrest Brown if Brown refused to allow Sweeney to impound the car. In light of this "threat," Brown still refused. Brown then offered to show Sweeney documents proving title to the car. Sweeney agreed and went with Brown to his house. Sweeney, after reviewing the documents, left without arresting Brown and without impounding the vehicle.[5]

This is not a situation where other reasonable or plausible facts could prove that a seizure occurred. In light of *Bell Atlantic,* a fair reading of this complaint compels the conclusion that Brown never felt that his freedom to leave was restricted. *See Florida v. Bostick,* 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389; *Brendlin v. California,* — U.S. ——, 127 S.Ct. 2400, 2405, 168 L.Ed.2d 132 (2007). Thus, Sweeney's "show of authority" never resulted "in the 'intentional acquisition of physical control' over the subject and caus[ed] a 'termination of [his] freedom of movement.'" *Britton,* 196 F.3d at 30 (citing *Brower v. County of Inyo,* 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989)). Importantly, Brown never "yielded" to the assertion of authority over him. *Id.*

Since Sweeney never effectuated a "seizure" of Brown, Brown's Fourth Amendment rights were not implicated and no action for constitutional injury may be maintained. Count I must be dismissed

### 2. Conspiracy to violate federal civil rights

A plaintiff may pursue a federal conspiracy claim under either section 1983 or section 1985. *Thore v. Howe,* 466 F.3d 173, 179 (1st Cir.2006) (applying section 1983); *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996) (applying section 1985). Brown does not indicate under which theory he pursues his claim. Indeed, Brown concedes that this claim ought likely be dismissed because Brown is not a member of a racial group or class against whom the co-conspirators were acting. Pl. Opp'n Mem. at 8.

Regardless whether Brown actually stipulates to this result, this count must be dismissed. A common element of theories, under both section 1983 and 1985, is the need to prove that the conspiratorial action deprived the plaintiff of the exercise of a constitutionally protected right or privilege. *Thore,* 466 F.3d at 179; *Aulson,* 83 F.3d at 3. As discussed above, Brown fails to allege any such injury. As a result, Brown's federal conspiracy claims in Count II must be dismissed for the same reasons.

### 3. Massachusetts Civil Rights Act

Brown also pursues claims for violations of his civil rights through the Massachusetts law analog to section 1983, Mass. Gen. Laws ch. 12, § 11I.[6] *See Sampson v.*

---

**5.** Since Brown was never arrested, this Court need not consider whether probable cause existed to effectuate such an arrest. *See Santoni v. Potter,* 369 F.3d 594, 598 (1st Cir. 2004).

**6.** Massachusetts General Laws ch. 12 § 11I provides:

"Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the common-

*Town of Salisbury*, 441 F.Supp.2d 271, 275 (D.Mass.2006)(Tauro, J.).

■ The Massachusetts civil rights act sweeps considerably more broadly than its federal counterpart. *See Bell v. Mazza*, 394 Mass. 176, 181, 474 N.E.2d 1111 (1985). To establish a claim under the Massachusetts Civil Rights Act, a plaintiff must prove that: (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth, (2) have been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion. *Shaheed–Muhammad v. Dipaolo*, 393 F.Supp.2d 80, 93, (D.Mass.2005)(Gertner, J.).

As to the first requirement (his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth) Brown has a constitutional right to free from unlawful seizure and from unlawful interference with his possessory rights to the vehicle.

As to the second requirement (having been the interference or attempted interference with his rights), Brown was not arrested nor was his possession for the vehicle interrupted. There was, however, an attempt to interfere with his rights, at least with respect to his possessory inter-

est over the vehicle. Sweeney did attempt to remove the vehicle and, if the facts alleged by Brown are true, he did so unlawfully as he knew that the vehicle was not stolen and he had no warrant to remove it.

As to the third requirement (threats, intimidation or coercion) for the purposes of the Massachusetts Civil Rights Act, " 'threat' . . . involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm . . . 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct . . . ['Coercion' involves] 'the application to another of such force, either physical or moral, as to constrain [a person] to do against his will something he would not otherwise have done.' " *Davis v. Rennie*, 264 F.3d 86, 111 (1st Cir.2001). *See also Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474–75, 631 N.E.2d 985 (1994). Brown was threatened with arrest if he did not waive his possessory right over the vehicle and allow Sweeney unlawfully to remove it. In this sense, Sweeney may have "attempt(ed) to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person [Brown] or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth".

wealth, has been interfered with, or attempted to be interfered with, as described in section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said such section, including the award of compensatory money damages."
While § 11H, provides:
"Whenever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights

secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth, the attorney general may bring a civil action for injunctive or other appropriate equitable relief in order to protect the peaceable exercise or enjoyment of the right or rights secured. Said civil action shall be brought in the name of the commonwealth and shall be instituted either in the superior court for the county in which the conduct complained of occurred or in the superior court for the county in which the person whose conduct complained of resides or has his principal place of business."

This Court, expresses no opinion on the matter, however, since, with the dismissal of the federal claims, the Court refuses to exercise supplemental jurisdiction and dismisses this claim.

### 4. Conspiracy to violate state civil rights

Massachusetts recognizes two kinds of civil conspiracy, both sounding in tort. *See Kurker v. Hill,* 44 Mass.App.Ct. 184, 188, 689 N.E.2d 833 (1998). The first kind allows recovery based on the tortious nature of the underlying conspiratorial conduct. *See id.* The second requires an added element of coercion where no independent basis for tort applies, but where the wrong occurs from the particular combination of the defendants. *See id.*

Brown alleges in his complaint that the injury he suffered was, once again, the deprivation of this federal and state constitutional rights. Compl. ¶ 57. As described above, Brown fails to state a claim for the deprivation of any federal constitutional rights. Moreover, as with Count III, the Court declines to exercise supplemental jurisdiction once the federal claims fall out of the case.

### D. *The Motion Hearing*

This session of the Court affords an oral hearing on all dispositive motions. As this case demonstrates, the value of this practice is enhanced in the wake of *Bell Atlantic.* Here, the Court attempted to implement the teaching of *Bell Atlantic* by probing for the factual underpinnings of the more conclusory allegations of the compliant. Brown's counsel responded with arguments that Sweeney not only threatened to seize but was actually physically seizing the vehicle when Brown arrived. While this has not been pleaded, Sweeney and Lucas' counsel necessarily believed the Court would take this oral argument as true and fell back on arguments that the case would founder on the doctrine of qualified immunity, which heretofore had neither been pled nor briefed. As counsel were arguing past each other, the Court took the matter under advisement mindful that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a).

## IV. CONCLUSION

In light of the discussion above, the Defendants' motion to dismiss [Doc. No. 6] will, at the expiration of 30 days from the date of this memorandum and order, be ALLOWED as Counts I and II and Counts III and IV will be remanded to the Massachusetts Superior Court sitting in and for the County of Plymouth unless the Plaintiff, in the interim, shall move for leave to amend accompanied by the proposed amended complaint. In deciding whether to seek leave to amend, Brown and his counsel keep in mind the requirements of Fed.R.Civ.P. 11.

**SO ORDERED.**