Jenny WILLIAMS, Plaintiff,

v.

Chief of Police, Jerry BLAISDELL, in his official capacity, Greg Lance, in his individual and official capacity, and Shawn Cortez, Defendants.

No. 4:00–CV–110–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

April 6, 2001.

Monroe "Mike" A. Windsor, Attorney at Law, Loe Warren Rosenfield Kaitcer & Hibbs, Fort Worth, TX, for plaintiff.

Gerald V. Bright, Attorney at Law, Walker Bright & Lewis, Dallas, TX, for defendants.

## MEMORANDUM OPINION and ORDER

MCBRYDE, District Judge.

After having considered the motion of defendants Jerry Blaisdell and Greg Lance for summary judgment, the response of plaintiff, Jenny Williams, and the reply thereto, the court determines that the motion should be granted.

### I.

#### Plaintiff's Claims

Plaintiff filed her original complaint on February 17, 2000, asserting claims under 42 U.S.C. § 1983 against defendants, Jerry Blaisdell ("Blaisdell"), in his official capacity as chief of police of the Weatherford Police Department, Greg Lance ("Lance"), individually and in his official capacity as an employee of the Weatherford Police Department, and Shawn Cortez ("Cortez"),[1] for alleged violations of her constitutional rights. Specifically, she alleges that:

Her rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution were violated when Lance erroneously enforced a child possession order by threatening her with immediate arrest if she did not give her daughter to Cortez, the child's father, for a weekend visit. As a result of these violations, she has suffered damages in the form of physical and mental pain, suffering, humiliation, embarrassment, anguish, the loss of companionship of her child, and legal expenses she incurred in an action she was forced to take in a state court custody proceeding to prevent similar violations of her rights from occurring in the future.

Plaintiff also seeks recovery of her reasonable attorney's fees incurred in this action under 42 U.S.C. § 1988.

### II.

#### Grounds of the Motion

Defendant Lance seeks summary judgment as to plaintiff's claims against him in his individual capacity on the grounds that (a) plaintiff cannot prove he violated any of her constitutional rights, and (b) even if plaintiff can prove he violated her constitutional rights, she cannot overcome his defense of qualified immunity.

Lance and Blaisdell seek summary judgment as to plaintiff's claims against them in their official capacities as employees of the Weatherford Police Department on the grounds that (a) plaintiff cannot prove Lance violated any of her constitutional rights, and (b) even if plaintiff can prove Lance violated her constitutional rights, she cannot prove that a policy, practice, or custom of the City of Weatherford caused the violation of her constitutional rights. Also, they seek summary judgment on plaintiff's claim for attorney fees under 42 U.S.C. § 1988 on the ground that plaintiff is not a prevailing party on her claims against them under § 1983.

### III.

#### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to

---

1. Cortez has failed to answer or otherwise respond to the complaint.

which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than merely show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256, 106 S.Ct. 2505. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s][its] claim[s]." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). An issue is material only if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary

judgment. *Simmons v. Lyons*, 746 F.2d 265, 269 (5th Cir.1984).

The standard for granting a summary judgment is the same as the standard for a directed verdict. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 597, 106 S.Ct. 1348.

### IV.

#### Summary Judgment Evidence

A. *Undisputed Summary Judgment Evidence:* [2]

The undisputed summary judgment evidence, viewed in a light most favorable to plaintiff, establishes the following:

Plaintiff and Cortez gave birth to a daughter, Natalie Noelani Cortez ("Natalie"), on February 15, 1994, and became subject to a final order affecting the parent-child relationship ("possession order") on May 11, 1998. The possession order appointed plaintiff the sole managing conservator, and Cortez the possessory conservator, of Natalie. It provided that Cortez was to have custody of Natalie beginning at 6:00 p.m. on the first, third, and fifth Fridays of each month and ending at 6:00 p.m. on the following Sunday. This schedule was subject to a holiday possession schedule, which provided that in odd-numbered years plaintiff was to have possession of Natalie beginning at 6:00 p.m. on the day she was dismissed from school by the Weatherford Independent School District ("W.I.S.D.") for the Christmas holiday and ending at noon on December 26th. Natalie attended school in the W.I.S.D. on Friday, December 17, 1999, and was dismissed from school on that

---

**2.** Certain of the statements made under this heading are supported by facts to which the parties stipulated in the pretrial order.

same day for the Christmas holiday. Therefore, plaintiff was entitled to custody of Natalie pursuant to the possession order from December 17, 1999, until 12:00 p.m. on December 26, 1999.

The Weatherford Police Department was requested at some point in time on Friday, December 17, 1999, (by someone whose identity is not disclosed by the record) to have a police officer present at plaintiff's residence for a child custody exchange. In response, the Weatherford Police Department dispatched Lance, an officer of the Weatherford Police Department, to plaintiff's residence for what is termed a "civil stand-by." A civil stand-by is a situation where a police officer is present during the exchange of custody of a child from one parent to another. Lance believed that he was being dispatched to perform the civil stand-by "for the safety of all the parties involved." Lance's dep. at 16.

When Lance arrived at plaintiff's residence at approximately 6:45 p.m. on December 17, he was approached by Cortez and Cortez's wife in the street. Cortez informed Lance that he was here to pick up his daughter from the daughter's mother, it was his weekend to have custody of Natalie, he was to have custody of Natalie from 6:00 p.m. that day until 6:00 p.m. the following Sunday, and that he had experienced problems with his daughter's mother in the past.[3] After talking with Cortez, Lance went to plaintiff's front door.[4]

Both plaintiff and her mother came to the door. After identifying himself as a Weatherford police officer, Lance stated that Cortez was there to receive custody of Natalie because it was Cortez's weekend for custody. Plaintiff informed Lance that Cortez had a history of being late for Natalie's possession exchange, that Cortez was more than twenty minutes late on this occasion, and that, based upon the advice of her counsel, she did not think she was required to relinquish possession of Natalie. After some discussion, Lance told plaintiff that Cortez was entitled to possession of the child any time between 6:00 p.m. on Friday until 6:00 p.m. on Sunday, regardless of whether he was late. Plaintiff responded by asking Lance if he would speak with her attorney on the telephone. Lance agreed to do so. However, plaintiff, after leaving the front door for a period of time, reported that she was unable to contact her attorney.

Lance had not read the possession order, and neither plaintiff nor her mother informed Lance that plaintiff had the right to refuse to relinquish possession of Natalie for any reason other than because Cortez was late. In other words, neither plaintiff nor her mother informed Lance that plaintiff had the right to possess Natalie pursuant to the possession order's

---

3. Plaintiff has admitted that criminal misdemeanor charges for assault/family violence were filed against her for assaulting Cortez in 1995; but, the record does not reflect Lance was aware of this incident. Also, the record establishes that there had been ongoing problems in the transfer of custody of Natalie from plaintiff to Cortez. For example, plaintiff would not allow Cortez or his wife to come onto her property to take custody of Natalie.

4. The custody order affecting Natalie that was in effect on December 17, 1999, contained a paragraph that said:

*Designation of Competent Adult.* Each conservator may designate any competent adult to pick up and return the child, as applicable. IT IS ORDERED that a conservator or a designated competent adult be present when the child is picked up or returned. Defs.' App. at 126. The court does not need to decide whether this provision can be interpreted as authorizing the intervention of Lance in the transfer of Natalie for visitation purposes.

provision dealing with the Christmas holiday.

After further discussion, the content of which is in dispute, concerning the consequences that might follow if plaintiff declined to relinquish custody of Natalie to her father pursuant to what Lance understood the custody order to require, plaintiff sent Natalie out the front door of the residence. Natalie walked past Lance, went to and entered her father's vehicle, and left with her father. Lance never took possession of Natalie, nor did he ever threaten to do so.[5]

### B. *Disputed Summary Judgment Evidence:*

Plaintiff testified by deposition that (a) she tried to inform Lance of her right to possess Natalie over the Christmas holidays, but Lance never gave her the opportunity, and (b) she offered to show Lance the possession order, but Lance refused. Lance disputes this evidence, and has offered his own evidence demonstrating that plaintiff was unaware of her right to possess Natalie over the Christmas holiday until she spoke with her attorney after Lance had left plaintiff's home.

Additionally, according to plaintiff's summary judgment evidence, Lance stated that, if she did not give Natalie to Cortez, Cortez could file criminal charges for interference with child custody and plaintiff

would be "arrested on the spot," Pl.'s dep. at 93, and that, out of fear of imminent arrest, plaintiff sent Natalie out the door. In contrast, Lance denies that he threatened plaintiff with arrest, and has testified that he merely advised plaintiff that, if she did not give Natalie to Cortez, Cortez "would have the right to file criminal charges against her for interference with child custody, ... [and,] if that occurred, [Lance] would write up the offense report, it would be sent to our investigators, and she could be arrested for that." Lance's dep. at 28.

### V.

### *Discussion*

### A. *Plaintiff's Claims Against Lance In His Individual Capacity:*

■ A public official who exercises discretion in the performance of his duties, such as Lance was here, is entitled to qualified immunity from suit under 42 U.S.C. § 1983 [6] unless it is shown by specific allegations that the official violated clearly established constitutional law. *Schultea v. Wood,* 27 F.3d 1112, 1115 (5th Cir.1994), *aff'd in part,* 47 F.3d 1427 (5th Cir.1995) (en banc). In analyzing whether a defendant is entitled to qualified immunity, the court undertakes a two-stage analysis. *Id.* The first step is to determine whether the plaintiff has stated a violation of a clearly established constitutional right.

---

5. Plaintiff alleged, apparently falsely, in a motion she filed December 21, 1999, in the state court where her child custody matter was pending, that "a Weatherford police officer warned [plaintiff] that if she did not hand over [Natalie] to [Cortez] the police would enter her residence and take the child, and [plaintiff] would be arrested." The summary judgment evidence is undisputed that Lance did not make the statements attributed to him in the state court motion.

6. Title 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The parties do not dispute that Lance was acting under color of state law in this action.

*Id.* at 1115–16. That determination necessarily includes a determination of whether the plaintiff has asserted a violation of a constitutional right at all. *Id.* at 1116. If the plaintiff is successful as to the first step, the next step is for the court to examine the objective reasonableness of the official's conduct. The court must determine whether the defendant's conduct was objectively reasonable in light of the clearly established law at the time of the incident. *Wooley v. City of Baton Rouge,* 211 F.3d 913, 919 (5th Cir.2000) (citation omitted). "An officer's conduct is not objectively reasonable when 'all reasonable officials would have realized the particular challenged conduct violated the constitutional provisions sued on.'" *Id.* (citation omitted).

1. *Whether Plaintiff Has Alleged Lance Violated Her Constitutional Rights:*

Plaintiff contends that Lance violated her rights under the First, Fourth, Fifth, and Fourteenth Amendments. These claims will be addressed in turn as follows.

a. *Plaintiff's First Amendment Claim:*

The court does not find that plaintiff has either alleged, or demonstrated, that her rights under the First Amendment have been violated. Therefore, Lance is entitled to summary judgment with respect to plaintiff's First Amendment claim.

b. *Plaintiff's Fourth Amendment Claim:*

■ Plaintiff has not responded to Lance's summary judgment assertion that she cannot prove her rights under the Fourth Amendment were violated; therefore, plaintiff has not met her burden under Rule 56(c). Accordingly, Lance is entitled to summary judgment on plaintiff's Fourth Amendment claim.

c. *Plaintiff's Fifth Amendment Claim:*

■ Lance is entitled to summary judgment on plaintiff's Fifth Amendment claim because the Fifth Amendment only applies to the actions of the federal government, and does not apply to the actions of a municipal police officer as is present here. *Morin v. Caire,* 77 F.3d 116, 120 (5th Cir.1996).

d. *Plaintiff's Fourteenth Amendment Claim:*

■ Plaintiff contends that Lance violated the Due Process Clause of the Fourteenth Amendment when he threatened her with immediate arrest if she did not allow Cortez to have custody of Natalie. It is well established that, as a general rule, the Fourteenth Amendment protects a parent's right to the care, custody, control, and management of their children from government interference. *Wooley,* 211 F.3d at 920–21 (citing *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972)). In the instant action, there had been acceptable governmental interference in the rights of plaintiff and Cortez in the custody, control, and management of Natalie in the form of the possession order.

By Lance's conduct, he was seeking to assist Cortez in realizing the rights given to him by the possession order, as those rights had been explained by Cortez to Lance. Nevertheless, the possession order, by virtue of the provision relating to the holiday season, vested in plaintiff the right to have custody of Natalie at the precise moment when Lance was encouraging plaintiff to relinquish temporary custody of Natalie to Cortez. Thus, in at least a technical sense, on the occasion in question Lance's conduct constituted government interference with plaintiff's right of custody over Natalie, with the conse-

quence that it can be said that plaintiff's Fourteenth Amendment constitutional right to have custody of Natalie free from government interference was violated, albeit unintentionally in the sense that Lance thought the right of custody of Natalie rested with Cortez at that moment.

### 2. *Whether Lance's Conduct Was Objectively Reasonable:*

Lance was at plaintiff's residence for the highly commendable purpose of preserving the peace. Plaintiff does not question the legitimacy of Lance's role as a peacekeeper.

At the pretrial conference held in this action on April 2, 2001, counsel for plaintiff acknowledged that plaintiff's only complaints against Lance are that, according to her, he threatened to arrest her on the spot if she did not relinquish custody of Natalie to Cortez and, perhaps, that, according to her, Lance rejected her suggestion that he read the possession order. In deciding the merits of the motion for summary judgment, the court is assuming, *arguendo*, that Lance did threaten to arrest plaintiff if she did not turn custody of Natalie over to Cortez, and that he rejected a suggestion of plaintiff that he read the possession order.

Thus, the issue boils down to whether any reasonable officer, situated as Lance was, would have relied on the word of the father as to the provisions of the possession order and would have threatened arrest of the mother as part of his attempt to persuade the mother to comply with the officer's understanding of the order.

The court has concluded that it cannot say that no reasonable police officer would have conducted himself as the court assumes Lance did on the occasion in question. While some officers might have insisted on seeing a copy of the custody order before acting, one cannot say that it

would be objectively unreasonable for an officer who has been told by a father that the order gave him the right to custody over the weekend, and who was not told by the mother that the father had misrepresented the order or that the father was mistaken concerning the terms of the order, to accept the word of the father in the making of the decisions the officer was required to make on the spot. Lance agreed to discuss the matter with plaintiff's attorney, and waited while she attempted to reach the attorney by telephone. One cannot say that Lance was acting arbitrarily or unreasonably in his decision-making under the circumstances. An officer reasonably would expect the mother to protest that she had the right to custody of the child because of the Christmas holiday if the information he had received from the father concerning the father's right to a weekend custody visit was incorrect.

In evaluating the reasonableness of the conduct of a police officer threatening to arrest a mother under the circumstances of this case, the court must take into account pertinent criminal laws of the State of Texas. Lance correctly informed plaintiff that if she interfered with a right Cortez had to custody of Natalie she would be in violation of the criminal laws of the State of Texas. Section 25.03 of the Texas Penal Code defines as a state jail felony offense the conduct of a person retaining a child younger than eighteen years when she knows that her retention violates the express terms of an order of a court disposing of the child's custody. If, in fact, Cortez had been entitled to temporary custody of Natalie over the weekend, plaintiff's withholding of Natalie from Cortez would appear to be in violation of this criminal statute. And, if Lance had told plaintiff that he would arrest her if she did not comply with Lance's understanding of

the possession order, his conduct would have been consistent with Article 14.01 of the Texas Code of Criminal Procedure, which authorizes a police officer to arrest an offender without a warrant for any offense committed in his presence or within his view. Some officers might have conducted themselves in a manner different from the way Lance is accused of conducting himself, but the important fact is that one cannot say that no reasonable officer would have conducted himself as Lance is accused of having done. Indeed, the court concludes that, circumstanced as it was, Lance conducted himself in an objectively reasonable manner. Consequently, the doctrine of qualified immunity prevents Lance from having any liability to plaintiff.

### 3. *The Custody Cases Upon Which Plaintiff Relies Are Not In Point:*

*Wooley v. City of Baton Rouge,* 211 F.3d 913 (5th Cir.2000), involved the physical seizure by officers in the State of Louisiana of a child, and the delivery by the officers of the child to another party. In the course of concluding that the officers did not act in an objectively reasonable manner when they relied on a Livingston Parish court order, the court explained "[t]he officers could not reasonably have viewed the order as one granting them authority to effect the transfer of custody of Jordan Zachary in light of the Louisiana statute which requires a civil warrant under such circumstances." 211 F.3d at 926. There is no Texas statute that could play a similar role in the instant action.

As was true in *Wooley, Hurlman v. Rice,* 927 F.2d 74 (2d Cir.1991), involved a forcible seizure by law enforcement officers of a child from the home of persons who had custody of the child. The facts, as described in the opinion, are that the officers forced their way into the home of the persons who had custody of the child, threatened them and the child's mother with immediate arrest if they sought to interfere with removal by the officers of the child from the premises, forced the mother to awaken and dress the child, and then physically took the child and delivered her to her father. Because of the factual differences between *Hurlman* and the instant action, *Hurlman* is not persuasive. Similar factual distinctions cause the third custody case upon which plaintiff relies, *Bennett v. Town of Riverhead,* 940 F.Supp. 481 (E.D.N.Y.1996), not to be beneficial to plaintiff.

### B. *Plaintiff's Official Capacity Claims Against Lance and Blaisdell:*

A suit against a public official in his official capacity is nothing more than a suit against the entity for which he is an agent. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Therefore, the court is construing plaintiff's official capacity claims against Lance and Blaisdell as being claims against the City of Weatherford. To establish liability against a municipality under § 1983, a plaintiff must prove that a policy, practice, or custom of the municipality caused a constitutional deprivation. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Fifth Circuit has held that this requires a plaintiff to prove the following three elements: (1) a policy maker, (2) an official policy, and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir.2001) (citing *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). Additionally, a municipality's liability cannot be predicated upon the doctrine of *respondeat superior. Id.* Rather, "the unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; [and,] isolated

or single events of unconstitutional actions by municipal employees will almost never trigger liability." *Id.* (citations omitted).

Here, plaintiff is relying on the single event of Lance's conduct on December 17, 1999. Plaintiff has not adduced summary judgment evidence of any other occasion where Lance, or another Weatherford police officer, has denied someone his or her constitutional rights while performing a civil stand-by. Further, plaintiff has not adduced summary evidence that attributes Lance's conduct to a policy, practice, or custom of the Weatherford police department. Therefore, the City of Weatherford is entitled to summary judgment with respect to plaintiff's official capacity claims.

## VI.

### *ORDER*

For the reasons discussed herein,

The court ORDERS that the motions of Lance and the City of Weatherford (through the official capacities of Blaisdell and Lance) for summary judgment be, and are hereby, granted.

The court further ORDERS that plaintiff's claims against Lance and the City of Weatherford (through the official capacities of Blaisdell and Lance) be, and are hereby, dismissed.