# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 12, 2013

No. 11-41029

Lyle W. Cayce
Clerk

JOHN MICHAEL HOGAN,

Plaintiff–Appellee,

v.

ROBERT CUNNINGHAM; CHRIS POTTER,

Defendants–Appellants.

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, OWEN, and SOUTHWICK, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Officers Robert Cunningham and Chris Potter (the Officers) appeal the district court's denial of their motion for summary judgment on John Hogan's 42 U.S.C. § 1983 claims of unlawful arrest and excessive force and his state-law assault and battery claims. We reverse the district court's denial of summary judgment on Hogan's excessive-force claim because the Officers are entitled to qualified immunity, but we affirm the district court's denial of summary judgment on Hogan's unlawful-arrest claim. We lack jurisdiction to consider the Officers' interlocutory appeal of the district court's denial of summary judgment on Hogan's state-law assault and battery claims.

No. 11-41029

## I

The Officers are members of the Corpus Christi Police Department. According to Officer Cunningham, on the night of the incident, he was dispatched in connection with a child-custody matter. He indicated that he was instructed to meet Hogan's ex-wife at a convenience store, and by the time he arrived, Officer Potter was already speaking to Hogan's ex-wife and examining some paperwork. Officer Cunningham explained:

> Officer Potter walked to my unit and let me know where we were going to, and explained to me that [Hogan's ex-wife] had court paperwork, child custody paperwork that appeared to be in order for what we looked for, and that we were going to go ahead and follow her over to [Hogan's] apartment.

The Hogan divorce decree included a standard possession order, which entitled Hogan's ex-wife to possession of their minor son at that time. According to Officer Cunningham, he and Officer Potter were going to "try and resolve the issue of the child custody."

Officer Cunningham indicated that, after arriving at Hogan's apartment, he did not receive an answer to his initial knocks on Hogan's door, but eventually the door was opened by Hogan's roommate, Kevin Loudin. When the door opened, Officer Cunningham placed his foot in the doorway so as to get a better view of the inside of the apartment. After Loudin informed Officer Cunningham that he was not Hogan, Officer Cunningham asked him to wake Hogan, and Loudin agreed. Loudin attempted to close the apartment door as he left to summon Hogan, but he was prevented from doing so because Officer Cunningham had his foot in the doorway. Hogan eventually came to the door and identified himself. The parties presented different versions of what happened next.

According to Officer Cunningham, when Hogan approached the door, he explained to Hogan that he and Officer Potter "were there in reference to his

2

son," and in response, Hogan told him that his son was in the apartment. Officer Cunningham said that he then explained that Hogan's ex-wife was with them and wanted to enforce the custody arrangement contained in the divorce decree. Officer Cunningham asserted that as soon as he explained to Hogan that he and Officer Potter were there to retrieve Hogan's son, "the door was forcefully trying to be closed." Officer Cunningham asserted that the door first hit him in the leg. He explained that once the door hit him in the leg, "I put my hands up to try and stop the door, and at that point a—just a sudden burst of force pushed me back with the door, and at that point the door hit me in the forehead." The Officers subsequently entered Hogan's apartment and arrested him for assault on a peace officer. According to the district court, Officer Potter's version of the events comported with that of Officer Cunningham. Officer Potter alleged that "Mr. Hogan grabbed the door and attempted to slam it shut on us. While slamming the door Mr. Hogan hit Officer Cunningham in the head with the door."

According to Hogan, when he approached the door, he told the Officers that they could not come inside the apartment. He could not remember if the Officers said anything to him, but he indicated that he attempted to close the door. At his deposition, Hogan was asked whether the door hit one of the Officers. He stated, "I don't remember because I got tackled immediately as soon as I tried to close it." When asked if it was possible, he said, "I don't know." Based on the conflicting evidence, the district court determined that there was "a genuine issue of material fact as to whether [Hogan] did in fact hit Officer Cunningham with the door."

What happened inside the apartment was also disputed. Officer Cunningham asserted that he attempted to perform a "controlled take-down." After the door hit him, he "pushed the door back to get it open to attempt to arrest Mr. Hogan." Officer Cunningham asserted that Hogan "started stepping

backwards into his apartment" and that he instructed Hogan "to turn around, put his hands behind his back because he was being placed under arrest." According to Officer Cunningham, Hogan rejected his instructions, which eventually prompted Officer Cunningham to attempt the controlled take-down. Officer Cunningham stated:

> While I was trying—while Mr. Hogan was in the process of losing his balance and going down to the floor, he grabbed on to my arms as well, and that caused me to lose my balance and I fell on the ground with Mr. Hogan as he went down.

Hogan claimed that "as soon as [he] attempted to close the door [he] got tackled." Hogan related that two officers tackled him, causing him to fall on his back. Hogan initially said the Officers fell on top of him, but when asked if both fell on him, he responded, "To the best of my knowledge. I mean, I don't know for sure." Hogan could not remember how long the Officers were on top of him. Hogan suffered two broken ribs. The district court noted that the parties did not contest that Hogan suffered an injury, but the court determined that there was "a factual dispute as to whether [the Officers] purposefully tackled [Hogan] or Defendant Cunningham accidentally fell on [Hogan] while attempting a controlled take-down."

Hogan filed suit against the Officers, bringing 42 U.S.C. § 1983 claims of excessive force, unlawful arrest, and malicious prosecution as well as Texas state-law claims of assault, battery, and malicious prosecution. Hogan also asserted claims against the City of Corpus Christi, but all of these claims were dismissed voluntarily. Eventually, the Officers moved for summary judgment, and the district court granted their motion in part and denied it in part. The court denied the Officers' motion with respect to Hogan's § 1983 claims of unlawful arrest and excessive force and his state-law claims of assault and battery. The court granted the Officers' motion with respect to Hogan's § 1983

No. 11-41029

and state-law malicious prosecution claims.  The Officers then filed notice of the present appeal.

## II

Ordinarily the denial of a defendant's motion for summary judgment is not appealable, but we have "limited jurisdiction to conduct an interlocutory review of a district court's order denying a motion for summary judgment based upon qualified immunity."[1]  Our jurisdiction "extends to these appeals only 'to the extent that [the denial of summary judgment] turns on an issue of law.'"[2]  The district court makes two distinct determinations when it denies an official's motion for summary judgment predicated upon qualified immunity: "First, the district court decides that a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law.  Second, the court decides that a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct."[3]  While "we lack jurisdiction to review conclusions of the *second* type on interlocutory appeal, . . . [w]e do . . . have jurisdiction to . . . review the *first* type of determination, the purely legal question whether a given course of conduct would be objectively unreasonable in light of clearly established law."[4]  "In other words, 'we can review the materiality of any factual disputes, but not their genuineness.'"[5]

Because we lack the authority to review the district court's decision that a genuine factual dispute exists, we do not apply the ordinary summary

---

[1] *Juarez v. Aguilar*, 666 F.3d 325, 331 (5th Cir. 2011).

[2] *Id.* (alteration in original) (quoting *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc)).

[3] *Kinney*, 367 F.3d at 346.

[4] *Id.* at 346-47.

[5] *Juarez*, 666 F.3d at 331 (quoting *Kinney*, 367 F.3d at 347).

No. 11-41029

judgment standard.[6] Instead, we "consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment."[7] "Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true."[8] "In reviewing the district court's conclusions concerning the legal consequences—the materiality—of the facts, our review is of course *de novo*."[9]

## III

The Officers argue that the district court erred in denying them qualified immunity with respect to Hogan's unlawful-arrest and excessive-force claims. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct."[10]

## A

We first address the Officers' claim that they are entitled to qualified immunity with respect to Hogan's unlawful-arrest claim. "It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause."[11] Additionally, "the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may

---

[6] *Kinney*, 367 F.3d at 348.

[7] *Id.*

[8] *Id.*

[9] *Id.* at 349.

[10] *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

[11] *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc) (per curiam) (citing *United States v. Shugart*, 117 F.3d 838, 846 (5th Cir. 1997)).

not reasonably be crossed without a warrant."[12]  Without a warrant, "police officers need . . . probable cause plus exigent circumstances in order to make a lawful entry into a home."[13]

Probable cause justifying an arrest "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."[14]  "The possibility that evidence will be removed or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence."[15]  An individual may also consent to a warrantless intrusion into his home.[16]  It is uncontested that the Officers lacked a warrant, and Hogan did not consent to their entry.  For Hogan's arrest inside his home to be constitutional, there must have been probable cause and exigent circumstances.

The Officers assert that they had probable cause to arrest Hogan for assault on a public servant based upon their allegation that Hogan hit Officer Cunningham with the apartment door.  The district court determined that there was "a genuine issue of material fact as to whether [Hogan] did in fact hit Officer Cunningham with the door."  As discussed above, when conducting an interlocutory review of a district court's order denying a motion for summary

---

[12] *Payton v. New York*, 445 U.S. 573, 590 (1980).

[13] *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002).

[14] *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (collecting cases).

[15] *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001) (citing *United States v. Richard*, 994 F.2d 244, 248 (5th Cir. 1993)).

[16] *See id.* at 719 ("A warrantless intrusion into an individual's home is presumptively unreasonable unless the person consents or probable cause and exigent circumstances justify the encroachment." (collecting cases)).

judgment based on qualified immunity, our jurisdiction is limited. While we may review the materiality of any factual disputes, we may not review the district court's determination that a factual dispute is genuine. We must view the facts in Hogan's favor, and according to Hogan's version of the events, he did not hit Officer Cunningham with the door. Assuming that fact to be true, the Officers would not have had probable cause to arrest Hogan for assault upon a public servant.[17]

Nevertheless, the probable cause requirement is satisfied in this case because the Officers had probable cause to believe that Hogan was committing the felony offense of interference with child custody. Section 25.03 of the Texas Penal Code provides that "[a] person commits an offense if the person takes or retains a child younger than 18 years of age when the person . . . knows that the person's taking or retention violates the express terms of a judgment or order, including a temporary order, of a court disposing of the child's custody."[18] Hogan does not contest that, prior to proceeding to his apartment, the Officers learned from his ex-wife that she had a divorce decree entitling her to possession of their minor son at that time. Despite Hogan's and the district court's reliance on Hogan's contention that he took possession of his son at the direction of the Portland, Texas Police Department, there is no evidence that the Officers knew this at the time Hogan was arrested. Although the district court said there was "a factual dispute as to whether [Hogan] knew that he was in violation of the custody order or whether he believed that he was excused from its terms," Hogan's knowledge is immaterial to the question of whether the Officers had probable cause; what is important to that question is the Officers' knowledge, not Hogan's. Based on the divorce decree and Hogan's refusal to turn over his son

---

[17] *See* TEX. PENAL CODE ANN. § 22.01(b)(1) (West 2011).

[18] *Id*. § 25.03.

to his ex-wife, the Officers had probable cause to believe that Hogan was in violation of section 25.03.

Although the Officers had probable cause to believe that Hogan was in violation of section 25.03 of the Texas Penal Code, their warrantless entry into Hogan's apartment was unconstitutional because, when the facts are viewed in Hogan's favor, there were no exigent circumstances. In arguing that there were exigent circumstances, the Officers rely solely upon the alleged exigency created by Hogan striking Officer Cunningham with the apartment door. But, as we reiterate once again, we lack jurisdiction to review the district court's determination that there was a genuine factual dispute as to whether Hogan hit Officer Cunningham with the apartment door. According to Hogan, he did not, and therefore no exigency justifying the Officers' warrantless entry can be based upon Hogan striking Officer Cunningham with the door.

We also conclude that no other exigent circumstances justified the Officers' warrantless entry into the home to arrest Hogan. No evidence of Hogan's interference with child custody was likely to be removed or destroyed, and there was nothing indicating an immediate safety risk that would justify a warrantless entry. The district court stated that the Officers "did not . . . have any knowledge or cause to believe that [Hogan] ever used any violence against his son or possessed any weapons," and the Officers concede that this determination is correct. Standing alone, the fact that the Officers were sent to Hogan's apartment to deal with a child-custody matter cannot create the exigency that would make the Officers' warrantless entry constitutionally permissible. Here, when viewing the facts in Hogan's favor, nothing the Officers knew or observed indicated a potential safety threat. Furthermore, the Officers cannot justify their warrantless entry based upon their hot pursuit of Hogan for the offense of interference with child custody. Hogan did not retreat into his apartment from a public place. He was fully inside his apartment at all times, and his apartment

was only opened after the Officers had knocked.[19] Viewing the facts in Hogan's favor, the Officers' entry into Hogan's apartment to effectuate his arrest violated the Fourth Amendment, in light of the lack of exigent circumstances.

The second inquiry is whether every reasonable official would have understood that what he was doing violated the Fourth Amendment.[20] "[E]xisting precedent must have placed the . . . constitutional question beyond debate."[21] At the time of the Officers' conduct, the Supreme Court and this court had made it abundantly clear that either a warrant or probable cause and exigent circumstances is required to arrest an individual in his home. The Officers are not entitled to qualified immunity and summary judgment on Hogan's unlawful-arrest claim, assuming, as we must, that Hogan's version of the events is accurate.

## B

We next consider Hogan's excessive-force claim. Even if the Officers unlawfully arrested Hogan, that alone does not mean that the force used to effectuate the arrest was excessive.[22] Ultimately, we conclude that the Officers are entitled to qualified immunity and summary judgment on this claim.

The first prong of qualified immunity is whether a defendant's conduct violated a constitutional right.[23] To state a violation of the Fourth Amendment

---

[19] *See United States v. Santana*, 427 U.S. 38, 40 & n.1, 42-43 (1976) (concluding that Santana was in a "public place" when the officers arrived at her residence because she was "standing directly in the doorway—one step forward would have put her outside, one step backward would have put her in the vestibule of her residence," and holding that she could not "thwart an otherwise proper arrest" by "retreating into her house").

[20] *See Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).

[21] *Id.* (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)) (internal quotation marks omitted).

[22] *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007).

[23] *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

prohibition on excessive force, a plaintiff must allege "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and that (3) the force used was objectively unreasonable."[24]   The objective reasonableness of the force depends on the facts and circumstances of the particular case—the need for force determines how much force is constitutionally permissible.[25]   The court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[26]   The Supreme Court explained in *Graham v. Connor*[27] that the reasonableness of the use of force must be judged from the perspective of a reasonable officer:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.[28]

Only the objective reasonableness of the force is considered; an officer's subjective intent is irrelevant.[29]

---

[24] *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)).

[25] *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir. 1996).

[26] *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

[27] 490 U.S. 386.

[28] *Graham*, 490 U.S. at 396-97 (citations omitted).

[29] *Id.* at 397.

No. 11-41029

As discussed earlier, Hogan's version of events is that when he encountered the officers at the door, he advised them that they could not come into the apartment and attempted to close the door. Hogan does not dispute that from the Officers' perspective, he had violated the law by failing to return his son to his son's mother in accordance with a court order. Attempting to shut the door on the officers could reasonably be viewed as resisting arrest for a felony. Entry into the home and tackling Hogan while he remained in sight was an amount of force calculated to effectuate an arrest of a person who was actively resisting arrest. The officers could reasonably have feared that Hogan might retreat into his apartment after shutting the door to arm himself or to obtain a weapon and then secrete himself in the apartment while the Officers searched for him. A reasonable officer was also entitled to consider that tackling a suspect was not necessarily likely to result in broken ribs or similar injuries. Under these circumstances, no reasonable jury could conclude that the officers used excessive force to subdue Hogan.[30]

Even if we are mistaken, however, and the Officers employed unreasonable force, that is not the end of the inquiry in a qualified immunity analysis. If the only question were whether the amount of force used was unreasonable, then the issue of qualified immunity would be subsumed by whether there was a constitutional violation. The Supreme Court explained in *Saucier v. Katz*[31] that the qualified immunity analysis in an excessive force case involves two distinct reasonableness inquiries.[32] One is whether the officer's use of force was objectively reasonable in light of Fourth Amendment standards.[33]

[30] *See Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 237 (5th Cir. 2009).

[31] 533 U.S. 194 (1989).

[32] *Saucier*, 533 U.S. at 200-02.

[33] *Id.* at 201.

No. 11-41029

The other is whether the right was clearly established such that a reasonable officer would know that the particular level of force used was excessive.[34] While the right to be free from excessive force is clearly established in a general sense, the right to be free from the degree of force used in a given situation may not have been clear to a reasonable officer at the scene.[35]

To say that the law was clearly established, "we must be able to point to controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity."[36]  "Although the Supreme Court has repeatedly admonished courts not to define clearly established law at a high level of generality, this does not mean that 'a case directly on point' is required.  Rather, 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'"[37]  In the end, the question is whether the right is "sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'"[38]

Viewing the facts in Hogan's favor, he approached his apartment door, told the Officers that they could not come inside, attempted to close the door, and was immediately tackled by two officers.  In tackling him, the Officers caused him to fall on his back, and they fell on top of him.  As a result, he suffered two broken ribs.  We conclude that Hogan has not met his burden to show that existing precedent at the time of his arrest placed beyond debate the question of whether

---

[34] *Id.* at 202 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

[35] *Id.* at 201-02; *see also Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008).

[36] *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (citation omitted) (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011)) (internal quotation marks omitted).

[37] *Id.* at 372 (quoting *al-Kidd*, 131 S. Ct. at 2083).

[38] *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (alteration in original) (quoting *al-Kidd*, 131 S. Ct. at 2078) (internal quotation marks omitted).

No. 11-41029

the use of such force amounted to a constitutional violation because the cases on which Hogan relies are distinguishable from the circumstances of this case.[39]

Hogan relies on *Blankenhorn v. City of Orange*[40] and *Brown v. Long Beach Police Department*[41] to show that it was clearly established that using such force is excessive. In *Blankenhorn*, the Ninth Circuit concluded that a rational jury could find the use of a "gang tackle" to be excessive under the circumstances,[42] but the circumstances here are distinguishable. The felony offense of interference with child custody is more severe than misdemeanor trespass, there is no evidence here that Hogan was cooperative in the past, and this case *did* involve a split-second police judgment because—accepting Hogan's version of the events—Hogan started to close the door on the Officers as soon as he approached the door, and the Officers had to decide immediately how to react. This is also not a case like *Brown* in which "a teenage girl weighing less than 100 pounds" was fleeing from a 300-pound officer arresting her for truancy.[43] Here, a felony offense was involved, and the Officers confronted two adult males inside the entryway of a home.

*Meredith v. Erath*,[44] cited by the district court, also presented different circumstances. The income-tax-related crimes investigated in that case were less likely to create a volatile situation than the child-custody matter involved here. Similarly, the plaintiff in *Meredith*—who repeatedly protested the search

---

[39] *See Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012) ("Once raised, the burden shifts to the plaintiff . . . ." (citing *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010))).

[40] 485 F.3d 463 (9th Cir. 2007).

[41] 105 F. App'x 549 (5th Cir. 2004) (per curiam).

[42] *Blankenhorn*, 485 F.3d at 478.

[43] *Brown*, 105 F. App'x at 550.

[44] 342 F.3d 1057 (9th Cir. 2003).

14

of her residence but only passively resisted her handcuffing—was not a safety risk, while here there was arguably a greater need for force. The Officers were confronted with making a split-second police judgment concerning how to deal with Hogan as he closed the door on them when they knew that another adult male, Loudin, was also within the apartment. In *Meredith*, thirteen IRS agents confronted a single female upon entering the third floor of the building they were searching.[45] Conversely, the two officers here were not yet within the apartment and knew that they would potentially be evenly matched against two adult males if further issues arose in arresting Hogan.

## IV

Apart from qualified immunity, the Officers contend that section 105.006(e-1) of the Texas Family Code entitles them to immunity, but we reject this contention. This provision does not grant immunity itself.[46] The reference to immunity appears to be a general reference to official immunity from state-law claims under Texas law.[47]

To the extent that the Officers may have intended to argue that they are entitled to qualified immunity because they "acted reasonably and did not offend any constitutional rights" while "attempting to assist Ms. Hogan in securing compliance with the divorce decree," the cases that the Officers cite do not support their argument because those cases do not present circumstances

---

[45] *Id.* at 1060.

[46] *See* TEX. FAM. CODE ANN. § 105.006(e-1) (West 2008) (mandating that, in an order providing for the possession of or access to a child, notice be prominently displayed regarding an officer's right to use reasonable efforts to enforce the terms of child custody and that the notice state that "[a] peace officer who relies on the terms of a court order and the officer's agency are entitled to the applicable immunity against any claim, civil or otherwise, regarding the officer's good faith acts performed in the scope of the officer's duties in enforcing the terms of the order that relate to child custody").

[47] *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994) (defining official immunity).

No. 11-41029

similar to those present here. Here, Hogan's constitutional claims involve an unlawful arrest and the use of excessive force. Neither of the cited cases involved an arrest or the use of force.[48]

## V

In addition to his § 1983 claims, Hogan also asserted civil assault and battery claims under Texas state law. Before the district court, the Officers argued that they were entitled to summary judgment on these claims because section 9.51(a) of the Texas Penal Code provides them with a civil-defense privilege. The district court determined that there were questions of fact concerning whether the Officers were entitled to the privilege, and therefore the court denied the Officers' motion for summary judgment on Hogan's assault and battery claims.

We lack jurisdiction to consider the Officers' interlocutory appeal of the district court's denial of their motion for summary judgment on these claims. Section 9.51(a) is not a grant of immunity; instead, it is an affirmative defense, which "privileges the conduct of all peace officers who use reasonable force to effect an arrest."[49] Because section 9.51(a) is merely an affirmative defense, this

---

[48] *Brittain v. Hansen*, 451 F.3d 982, 985-87 (9th Cir. 2006); *Williams v. Blaisdell*, 173 F. Supp. 2d 574, 581 (N.D. Tex. 2001) ("[P]laintiff's only complaints against Lance are that . . . he threatened to arrest her on the spot if she did not relinquish custody . . . and, perhaps, that . . . Lance rejected her suggestion that he read the possession order.").

[49] *Villafranca v. United States*, 587 F.3d 257, 263-64 (5th Cir. 2009) (relying on section 9.51(a) being a privilege and not an immunity); *see also* TEX. PENAL CODE ANN. § 9.02 (West 2011) ("It is a defense to prosecution that the conduct in question is justified under this chapter."); *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 & n.14 (Tex. 2001) (describing section 9.51 as an "affirmative defense of privilege").

court lacks jurisdiction to consider this portion of the Officers' appeal at this time.[50]  The cases cited by the Officers do not mandate a different conclusion.[51]

\*　　\*　　\*

We AFFIRM the district court's denial of summary judgment on Hogan's unlawful-arrest claim and REMAND to the district court for proceedings consistent with this opinion.  We REVERSE the district court's denial of summary judgment on Hogan's excessive-force claim and RENDER judgment in the Officers' favor on that claim.  We lack jurisdiction to consider the Officers' interlocutory appeal of the district court's decision denying them summary judgment on Hogan's state-law assault and battery claims.

---

[50] *See Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) ("[A] denial of a defendant's motion for summary judgment is ordinarily not immediately appealable . . . .").

[51] *See Villafranca*, 587 F.3d at 260-65 (affirming the district court's judgment against the plaintiff on his assault claim after determining that the federal agents' conduct was privileged under section 9.51(a)); *Fraire v. City of Arlington*, 957 F.2d 1268, 1269, 1273-77 (5th Cir. 1992) (agreeing with the district court that the officer was entitled to qualified immunity and, in doing so, referencing section 9.51(a) in order to demonstrate that the officer's actions were not grossly disproportionate); *Petta*, 44 S.W.3d at 578-80 (holding that the officer was entitled to the affirmative defense of privilege based on collateral estoppel arising from the plaintiff's prior criminal trial and conviction).