**Opinion issued April 2, 2015.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-01049-CR

———————————

**EVELT DAVIS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1360900**

---

## MEMORANDUM OPINION

A jury convicted appellant, Evelt Davis, of unlawful possession of a firearm by a felon, and the trial court assessed punishment at 40 years' confinement. In his sole point of error, appellant contends the trial court erred in denying his motion to

suppress, arguing that his arrest was unlawful because it was procured by excessive force. We affirm.

## BACKGROUND

At 10:30 p.m. on January 11, 2012, Houston Police Department Officers E. Tewes and R. Moss were in their patrol car heading westbound on Yellowstone Boulevard near the Paris Street intersection. While the two officers were patrolling the area in their police cruiser, they saw appellant riding a bicycle towards them on Yellowstone Boulevard. As appellant rode down the street, Officer Tewes saw appellant cross over the yellow line dividing the eastbound and westbound lanes, which Officer Tewes described as a "zigzagging in and out of traffic" and "not obeying traffic laws." According to Tewes, this constituted the misdemeanor traffic violation of failure to maintain a single lane of traffic.[1] Additionally, appellant's bicycle did not have a headlight on it, a separate misdemeanor traffic violation.[2] Tewes believed that appellant's failure to maintain a lane on his bicycle was a sign of intoxication because "the way he was riding the bicycle it seemed like he was unsteady and kind of weaving back and forth without regard for any kind of traffic." Tewes testified that appellant "was going back and forth from the eastbound lane into the westbound lane, back and forth [across the yellow line]." Therefore, Tewes and Moss decided to detain appellant and talk to him. The

---

[1] *See* TEX. TRANSP. CODE §§ 542.301 & 545.060 (Vernon 2011).
[2] *See* TEX. TRANSP. CODE §§ 542.301 & 551.104 (Vernon 2011).

officers wanted "to make sure that [appellant] wasn't going to hurt himself or was intoxicated to the point that he was going to crash into somebody else."

To draw appellant's attention, the officers slowed their cruiser down and Officer Moss used the cruiser's public address system to tell appellant "Hey, come here for just a second." The officers then stopped their cruiser in front of appellant, who continued on and pedaled past the cruiser on the passenger side. After ignoring the officers and passing their car, appellant began to accelerate his bicycle by "step[ping] up onto the peddles and [] peddling as fast as he could to try to get the bike going as quickly as he could. This caused Officer Tewes to conclude that appellant was now committing the offense of evading arrest or detention, which is generally a misdemeanor, but can be a felony if there is a prior conviction under the chapter or a vehicle is used.[3]

Tewes got out of the cruiser, yelled at appellant to stop, and began to chase after him on foot. Because he did not want to use his gun or his taser to stop appellant, Tewes "tackle[d] him off of the bicycle." Tewes testified, "I ran up and just kind of jumped and hit him, and then I guess my momentum—we both fell off of the bike onto the opposite side, onto the grass." The force from the tackle threw appellant off of his bike, over the sidewalk running beside the roadway, and onto the grass behind the sidewalk. Appellant landed facedown with his hands

---

[3]     *See* TEX. PENAL CODE § 38.04 (Vernon Supp. 2014).

underneath his body and Tewes on his back. Tewes pulled at appellant's hands to try to place handcuffs on him. When the officer pulled one of appellant's hands out from under his body, he saw that appellant was holding a gun.

Tewes yelled "gun, gun, gun," and tried to swat at appellant's arm in an attempt to get him to drop the gun. The gun finally fell out of appellant's hand, landing about two feet away from appellant. Appellant began trying to lift himself off the ground and slide toward the gun.

Officer Moss got out of the police car and came up to assist in arresting appellant. Moss initially drew his weapon, but then reholstered it and began to strike appellant in the torso while Tewes began to choke him to divert appellant's attention from trying to reach the gun.

Appellant responded by kicking uncontrollably, striking Moss in the groin with his foot. Between the two officers, they were finally able to handcuff appellant, who was then "picked up and placed in the backseat of [the] patrol car." The entire struggle lasted for approximately a minute.

After appellant was placed in the back of the patrol car used by Officers Moss and Tewes, two other police officers arrived on scene to help with identifying appellant, who would not tell the officers his name. While in the patrol car, appellant kicked at the windows and doors and made several statements such

4

as "[t]hat's not the only gun I have" and "[y]ou should have killed me because it's on now."

Appellant was not injured during the arrest.

At trial, appellant filed a motion to suppress all evidence obtained as a result of his arrest, including his post-arrest statements and the handgun. The trial court denied the motion, appellant was convicted and sentenced, and this appeal followed.

## MOTION TO SUPPRESS

In his sole issue on appeal, appellant contends "[t]he trial court erred in denying [his] Motion to Suppress, as the force used by [the police officer] to arrest the Appellant was excessive under the circumstances and amounted to a violation of the Appellant's Fourth Amendment rights."

### A.     Standard of Review and Applicable Law

We review the trial court's ruling on a motion to suppress evidence for abuse of discretion, using a bifurcated standard. *See Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). We give "almost total deference" to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Id.* at 89. We review de novo the trial court's determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and

5

demeanor. *Id.* When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, so long as it finds some support in the record. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006); *see Moran v. State*, 213 S.W.3d 917, 922 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006).

The Fourth Amendment to the United States Constitution prohibits the use of excessive force to seize a fleeing suspect. *Graham v. Connor*, 490 U.S. 386, 394, 109 S. Ct. 1865, 1871 (1989); *see also Plumhoff v. Rickard*, ___U.S.___, 134 S. Ct. 2012, 2020 (2014). The use of deadly force cannot be justified solely because a suspected criminal is fleeing: "A police officer may not seize an unarmed, nondangerous suspect by shooting him dead." *Tennessee v. Garner*, 471 U.S. 1, 11, 105 S. Ct. 1694, 1701 (1985). Deadly force is only a constitutional option when an "officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Id.* Whether a sufficiently serious threat exists is a matter of objective reasonableness, not subjective belief, which nonetheless takes into account the facts and circumstances faced by the individual officer. *Graham*, 490 U.S. at 396–97, 109 S. Ct. at 1872. The reasonableness of the use of deadly force "must be judged from the

6

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* We "allo[w] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.*

**B.    Analysis**

Appellant argues that "[b]y tackling the Appellant, Officer Tewes was effectively employing deadly force, as the Appellant could have easily landed on the concrete surfaces of the street or sidewalk while bearing the full weight of Officer Tewes on top of him." Appellant states that "[a]lthough at first blush it may seem that a tackle does not qualify as deadly force, the circumstances surrounding the tackling of the Appellant demonstrate that suffering serious bodily injury at the hands of Officer Tewes was a distinct possibility."

The State contends that appellant is trying to argue that the police used "lethal force" to arrest him for a traffic violation so that he can rely on *Tennessee v. Garner*, which bars the use of deadly force against fleeing suspect that does not pose an immediate threat to others. *See Garner*, 471 U.S. at 11, 105 S. Ct. at 1701 ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

7

We agree with the State that the issue is not whether tackling appellant was a use of deadly force; the issue is whether the force used was objectively reasonable. "*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'" *Scott v. Harris*, 550 U.S. 372, 382, 127 S. Ct. 1769, 1777 (2007). "Garner was simply an application of the Fourth Amendment's 'reasonableness test' . . . to the use of a particular type of force in a particular situation." *Id.*

In determining the reasonableness of a seizure, we balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interest to justify the intrusion. *Id.* In judging the reasonableness of Tewes's tackling of appellant, we must consider the risk of bodily harm that Tewes's action posed to appellant in light of the threat to the public that he was trying to eliminate. *See Id.* We should consider whether (1) the lives and well-being of others was at risk, and (2) there was a safer way, given the time, place, and circumstances, to apprehend the appellant. *Id.* at 386, 127 S. Ct. at 1779 (Ginsburg, J., concurring).

Here, appellant was (1) riding a bicycle at night with no headlight, (2) on a public street, (3) while weaving in and out of traffic, and (4) crossing the center line into oncoming traffic. Based on this, Tewes could have reasonably concluded that appellant posed a threat to the safety of others traveling on the public street. It

8

is entirely conceivable that, had he been allowed to continue traveling in this erratic manner, appellant could have caused a traffic accident as motorists swerved or braked to avoid a collision with him.

Regarding whether there was a safer way to apprehend appellant, Tewes testified that he had a gun and a taser, but he did not feel that the circumstances warranted the use of either. Instead, he knocked appellant off the bike and into the grass. Tewes could have reasonably believed that this was the safest and most effective way of detaining appellant as he tried to flee from a lawful detention.[4]

Appellant seems to be arguing that because Tewes could not apprehend appellant without tackling him, appellant should have been allowed to flee, thereby avoiding detention. We disagree. In *Scott v. Harris*, a police officer terminated a high speed chase by hitting the fleeing suspect's rear bumper, which caused the suspect's car to leave the road and crash, rendering the suspect a quadriplegic. *Id.* at 375, 127 S. Ct. at 1773. The suspect sued the police officer, and the Supreme Court considered whether the police officer's actions were reasonable in light of the circumstances. *Id.* at 384, 127 S. Ct. 1778. One argument the Court considered was whether the officer could have prevented the entire accident by not chasing the suspect. In considering whether police should simply allow suspects to flee, the Court stated:

---

[4]     Appellant does not contest the lawfulness of the officer's attempt to detain him.

9

> [W]e are loath to lay down a rule requiring the police to allowing fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness. Instead, we lay down a more sensible rule: A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death.

Id. at 385–86, 127 S. Ct. 1779.

While this case does not involve a high-speed car chase, the issue is much the same. Why should a police officer be forced to allow a bicyclist who is creating a risk to himself and others on a public street be allowed to evade a lawful detention by fleeing, if there is a reasonable means of apprehending him? Here, the trial court could have determined that Officer Tewes's "tackle" was the most reasonable method of detaining appellant, who was creating a risk of injury to all those traveling the same street. Indeed, appellant cites no cases to support his assertion that "tackling" a defendant is an excessive use of force, and nothing in the record shows any injury suffered by appellant. Indeed, other cases have found more forceful actions by the police than those taken by Tewes to be reasonable under the circumstances. *See Padilla v. Mason*, 169 S.W.3d 493, 500, 504 (Tex. App.—El Paso 2005, pet. denied) (holding officer's action in pinning and breaking arm of defendant actively resisting arrest not unreasonable use of force); *see also*

10

*Hogan v. Cunningham*, 722 F.3d 725, 734 (5th Cir. 2013) (holding that "controlled takedown" breaking two ribs of defendant resisting arrest was not excessive force). Indeed, in *Hogan*, the court noted that "[a] reasonable officer was also was also entitled to consider that tackling a suspect was not necessarily likely to result in broken ribs or similar injuries[,]" and that "no reasonable jury could conclude that the officers used excessive force to subdue Hogan [by tackling him]." *Id.*

Under the facts presented in this case, Tewes's actions in effectuating appellant's detention by tackling him off of his bicycle was objectively reasonable. As such, the trial court did not abuse its discretion by denying appellant's motion to suppress.

We overrule appellant's sole point of error.

## CONCLUSION

We affirm the trial court's judgment.


        Sherry Radack
        Chief Justice


Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish. TEX. R. APP. P. 27.2(b).